LaVern L. ZAEHRINGER, Appellant,

v.

Lou V. BREWER, Warden, Iowa State
Penitentiary, Appellee.

No. 79–1812.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1980.

Decided Dec. 24, 1980.

**735**

Robert Bartels, College of Law, University of Iowa, Iowa City, Iowa, for appellant.

Thomas D. McGrane, Asst. Atty. Gen., argued, Thomas J. Miller, Atty. Gen. of Iowa, Des Moines, Iowa, on brief, for appellee.

Before LAY, Chief Judge, BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

LaVern L. Zaehringer, an inmate of the Iowa State Penitentiary currently serving a sentence of life imprisonment, appeals from a decision by the United States District Court for the Southern District of Iowa [1] denying his petition for writ of habeas cor-

pus. Petitioner attacks his 1958 convictions in Iowa state court for first degree murder and assault with intent to commit murder claiming that his guilty pleas to these charges were not knowing, intelligent and voluntary and were invalid. Petitioner also alleges that the use of television equipment at his sentencing hearing violated his fourteenth amendment right to due process. Although on constitutional grounds we have difficulty with the televising of petitioner's sentencing hearing, in the circumstances we affirm.

On July 16, 1958 petitioner was arrested in Davenport, Iowa and charged in Iowa District Court with murder for the fatal shooting of William Jurgens, a Davenport police officer. The shooting occurred after petitioner, in the presence of at least four witnesses, wrested a gun from another police officer and shot and killed officer Jurgens. On August 15, 1958 petitioner was arraigned on the murder charge and on August 22, 1958 he pleaded not guilty to that charge.

Because of the widespread and allegedly prejudicial media coverage of the murder, petitioner filed a motion for change of venue contending that the publicity had made a fair trial in Davenport impossible. To support his motion, petitioner filed thirty–five affidavits of county residents stating that petitioner could not receive a fair trial in Davenport. The State in response filed thirty-five affidavits in which thirty–five of the thirty-seven members of the previous petit jury panel urged that a fair trial would be possible. Finding the extensive publicity surrounding the murder would not impair petitioner's right to a fair trial, the trial judge denied the motion for change of venue.

After the motion was denied, petitioner's attorney, Mr. Delaney, advised him that if he went to trial in Davenport a jury would likely convict him and impose the death penalty. Delaney additionally informed petitioner that he could promise the trial judge would not impose the death penalty if

---

1. The Honorable Harold D. Vietor, United States District Judge.

the petitioner pleaded guilty. With the petitioner's approval Delaney, in an attempt to secure a plea bargain, began discussions with the assistant prosecuting attorney and the judge scheduled to preside at petitioner's trial. Delaney elected not to challenge the ruling on the motion for change of venue in the Iowa Supreme Court by petitioning for writ of certiorari.

According to the testimony of petitioner, Mr. Delaney never informed him of his right to appeal the change of venue motion. Furthermore, petitioner alleges that between the time of his arrest and the entry of his guilty pleas, Mr. Delaney met with him approximately six different times but never discussed possible defenses to nor elements of the murder charge.

On October 6, 1958 petitioner appeared in court, withdrew his previous plea of not guilty, and pleaded guilty to an open charge of murder. The plea was entered after the trial judge informed petitioner that he was charged with the murder of officer Jurgens and that the maximum penalty for the offense charged was a death sentence. The trial judge then asked the petitioner if he intended to plead guilty to the murder charge and the petitioner indicated that he did so intend. Mr. Delaney stated that he had discussed the plea with the petitioner.

Following the guilty plea the prosecuting attorney filed an additional charge of assault with intent to commit murder. Although petitioner alleges he was not apprised of the fact that there would be an unspecified additional charge until immediately before the plea hearing, it appears that Delaney learned of this charge shortly after the trial court ruling on the change of venue motion. When the assault charge was presented, Delaney waived time to plead and petitioner entered a plea of guilty to the additional charge.

After the plea hearing, a degree of guilt hearing was set for October 10, 1958. Prior to this hearing the presiding judge, the petitioner, the petitioner's attorney, and the prosecuting attorney met in the judge's chambers. At this meeting the judge asked the petitioner if he would consent to televi-

sion coverage of his sentencing and informed petitioner that he had the option of barring the television equipment from the courtroom during sentencing. Petitioner, however, responded that he would leave the decision to his attorney. Mr. Delaney immediately indicated that television coverage of the sentencing would be acceptable and thus petitioner signed a consent form. Mr. Delaney never met privately with petitioner to inform him of potential adverse effects which might result from televising the sentencing hearing.

Although the trial judge ruled that he would not allow television coverage of the degree of guilt hearing which was scheduled to occur immediately prior to the sentencing hearing, a television camera and microphones were already in the courtroom prior to both the degree of guilt and sentencing hearings.

In the course of the degree of guilt hearing, the prosecutor called several witnesses including two eyewitnesses to the murder. Petitioner called one character witness. On the basis of this evidence, the trial judge found petitioner guilty of first degree murder and assault with intent to commit murder. Then, with the television equipment in operation, the trial judge pronounced the sentence. The judge sentenced petitioner to life imprisonment on the charge of first degree murder and thirty years imprisonment on the assault charge. When the assistant prosecuting attorney who was handling the case noted that petitioner's sentence might be commuted and the petitioner released, the trial judge responded that this could be avoided by ordering the two sentences to run consecutively.

Both the trial judge and prosecuting attorney were candidates for reelection less than one month after these hearings. Although the trial judge was unopposed, the prosecuting attorney had a challenger to his bid for reelection and cited petitioner's case in his campaign materials.

On December 13, 1972 petitioner filed an application for post-conviction relief in Iowa District Court in and for Scott County seeking to have his guilty pleas and sen-

tences reversed. The state court, however, denied the application. The petitioner then appealed this decision to the Iowa Supreme Court, but the appeal was dismissed. Later, petitioner filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Iowa. The petition was referred to Ronald E. Longstaff, a United States Magistrate. The magistrate held an evidentiary hearing on February 27, 1978 and issued a report and recommendation which concluded that a new degree of guilt and sentencing hearing should be ordered because petitioner's due process rights had been violated at the original hearing due to the presence of television coverage. The magistrate, however, upheld the petitioner's guilty pleas.

While the district court affirmed the magistrate's findings as to the validity of petitioner's guilty pleas, the district court rejected the magistrate's determination that petitioner was denied due process because of the presence of the television cameras in the courtroom. The present appeal was taken from this judgment of the district court.

On appeal petitioner first argues that his guilty pleas were invalid because he was denied effective assistance of counsel. Petitioner cites two deficiencies in his legal representation: (1) his attorney failed to inform him of his right to attempt to obtain review of the change of venue ruling in the Iowa Supreme Court; and (2) his attorney failed to inform him of the elements of the crimes charged and effective defenses to those charges. Petitioner further complains that the trial judge did not explain the elements of the crimes charged, establish a factual basis for the guilty pleas and ascertain whether the pleas were voluntary. In light of these omissions, petitioner contends the guilty pleas were not knowing, intelligent and voluntary and thus should be vacated.

■ We do not agree. As to petitioner's allegations of ineffective assistance of counsel, we note that it is settled in this circuit that a criminal defendant is entitled to the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances. *United States v. Easter*, 539 F.2d 663 (8th Cir. 1976). To determine whether an attorney has provided such competent and diligent representation in a case where a defendant challenges post-trial the effectiveness of counsel, this court has required that the defendant at least show that there was a dereliction of duty by his counsel. *United States v. Rhoads*, 617 F.2d 1313 (8th Cir. 1980). In the present case, we find no persuasive evidence of such dereliction of duty.

Turning first to the allegation that Mr. Delaney was derelict in that he failed to inform petitioner of his right to attempt to seek review of the change of venue ruling, we observe that there is no evidence, other than the testimony of the petitioner, establishing that Mr. Delaney failed to discuss this option with his client.[2]

■■ But even assuming that Mr. Delaney did in fact fail to discuss the possibility of obtaining review of the change of venue ruling with his client, we cannot hold that this omission constitutes serious dereliction of duty. Given the fact that the trial judge based his ruling on the affidavits of thirty-five of the thirty-seven members of the previous petit jury panel who stated that petitioner could obtain a fair trial in Davenport, it would have been difficult to establish that the trial judge abused his discretion and convince the Iowa Supreme Court even to issue a writ of certiorari. We do not think an attorney necessarily fails to render effective legal service if he fails to discuss with his client a procedural alternative which a reasonable attorney in similar circumstances would consider having little or no likelihood of success. *Cf. Lewis v. United States*, 585 F.2d 915, 918 (8th Cir. 1978); *Reynolds v. Mabry*, 574 F.2d 978, 979 (8th Cir. 1978). Both the magistrate and the district judge fully considered the circumstances surrounding the change of venue problem and concluded there was no lack of effective assistance of counsel. Those

2. Mr. Delaney died before petitioner sought post conviction relief.

findings are reasonable and we are not inclined to upset them.

■ We are also unconvinced by petitioner's argument that he was denied effective assistance of counsel because Mr. Delaney failed to apprise him of the elements of and defenses to the crimes charged. Upon reviewing excerpts from the degree of guilt and sentencing hearing, we observe that petitioner's attorney raised at least three defenses to the murder charge including an apparent self-defense, diminished capacity and lack of premeditation argument. In light of this presentation, we find it difficult to believe that Mr. Delaney did not discuss the elements of and possible defenses to the crimes charged. Other than his own testimony, petitioner offered no evidence to convince us otherwise, and we thus conclude, as did the district court, that Mr. Delaney exercised the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, *United States v. Easter, supra,* and that the guilty plea should not be vacated because of serious dereliction by petitioner's attorney. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

■ Petitioner's other arguments as to the invalidity of his guilty pleas merit little attention. In regard to petitioner's claim that certain procedural omissions by the trial judge prior to his plea of guilty render the pleas invalid, we note that this argument was not raised in the district court and cannot be asserted for the first time on appeal.

■ In addition, we note that petitioner separately argues that his guilty plea as to the charge of assault with intent to murder was invalid because he was not informed of this charge until immediately before the degree of guilt hearing. We find it unnecessary to address this argument because the Iowa District Court in a post-conviction proceeding in 1972 held that petitioner had served his thirty year sentence for the assault charge. Because petitioner does not allege any present harm resulting from the assault conviction, any claim as to the invalidity of his guilty plea to the assault charge would, of course, be moot. *Lynch v. Henderson,* 469 F.2d 1081 (5th Cir. 1972); *Connolly v. Sigler,* 339 F.2d 705 (8th Cir. 1965).

■ Petitioner's second assignment of error is that the televising of his sentencing hearing violated his due process rights under the fourteenth amendment. Relying on *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), petitioner argues that televising a sentencing hearing of a highly publicized criminal case without first obtaining defendant's "knowing" consent is a denial of due process. Although we recognize that petitioner's analysis may to some degree represent an extension of *Estes,* we believe that televising and broadcasting of petitioner's sentencing hearing tended to disrupt the fair and orderly administration of justice and deprived petitioner of his right of due process.

In *Estes v. Texas, supra,* the Supreme Court announced a per se rule to govern the propriety of television coverage of criminal proceedings. The case involved a trial of a well known financier on a charge of swindling. The trial received massive publicity and gained national notoriety. Because of the widespread interest, the trial judge over the objection of the defendant allowed television coverage of the trial. The Supreme Court, however, reversed the defendant's conviction holding that the televising and broadcasting of portions of the courtroom proceedings violated defendant's due process rights even absent a showing of any "isolatable prejudice" resulting from the television coverage. While only four Justices joined in the opinion announcing this per se rule for all criminal trials, a fifth member of the majority, Mr. Justice Harlan, noted that he believed the per se rule is appropriate in a "notorious" case which is "heavily publicized" and "highly sensational." Thus, *Estes* can be construed as standing for the proposition that television coverage of a "notorious" criminal case absent the defendant's validly obtained consent is a per se violation of due process.

It is argued, however, that the *Estes* rule is inapplicable to the present case because

of the difference in the factual settings. For example, it is noted that in the instant case only the sentencing hearing was televised and that defendant expressly consented to the television coverage while in *Estes* a trial was televised over the objections of the defendant. Moreover, it is further alleged that the present case must be distinguished from *Estes* in that this case did not achieve the national notoriety or publicity of *Estes*.

We do not believe that these factual differences render the rule announced in *Estes* inapposite.

We first note that televising a sentencing hearing, just as televising a trial, can have a significant impact on the outcome of a criminal proceeding. As the Supreme Court recognized in *Mempha v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), sentencing is a critical stage in a criminal case.

Additionally, we observe that petitioner in the present case did not "knowingly" and "voluntarily" consent to television coverage of the sentencing hearing. Rather, he was asked to make an instantaneous decision without any previous or private consultation with his attorney and at a time when he doubtless was interested in agreeing to any procedure that would tend to preserve, rather than disrupt, his arrangement to avoid the death sentence.

We do not believe that waiver or consent should be given effect, particularly in the extraordinary circumstances of this case where petitioner has presented a "substantial claim which goes to the very foundation of [the] proceeding . . . ." *Bailey v. Henslee*, 168 F.Supp. 314, 317 (E.D.Ark.1958). *See Moore v. Dempsey*, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923).

Finally, we note that although the instant case did not receive the massive national publicity of the *Estes* case, the evidence clearly demonstrates that there was tremendous interest in Davenport as to the outcome of the trial. And it was in Davenport that sentence was to be imposed.

In such circumstances, we believe that the *Estes* per se rule properly should be applied.

From what has been said it might be assumed that a reversal is in order here. Such is not necessarily the case. While under *Estes* prejudice is presumed, we do not read *Estes* as prohibiting a showing that in fact the defendant was not harmed. Here the sentencing choice available to the sentencing judge was life imprisonment or death. The sentence was the lowest available when the companion sentence for assault is disregarded. As indicated, that sentence is no longer a factor in the case.

Since the date of petitioner's conviction the Iowa law concerning murder has been changed to some extent. Under Iowa Code Ann. § 707.2 murder in the first degree is now described as a Class A felony, punishment for which is a mandatory life sentence without possibility of parole, *see* Iowa Code Ann. § 902.1. Were there any substantial question that a lesser sentence could be imposed we would consider remanding for possible resentence under the new statute. *Cf. Klimas v. Mabry*, —— U.S. ——, 100 S.Ct. 2755, 65 L.Ed.2d 897 (1980). But since it is clear that a sentence for first degree murder under either the statute in effect in 1958 or the statute now in effect would be no more lenient than that which petitioner is serving, it is clear that petitioner's sentence for first degree murder as a sentence was not prejudiced in fact by television coverage.

Again, however, this is not the end of our inquiry. Petitioner argues that the taint of television goes back to the degree of guilt hearing where it prejudiced the determination of the degree of homicide of which petitioner might have been found guilty and the assertion of any defenses he might have chosen to put forward.

Petitioner argues that since the fact that the sentencing hearing would be televised was known to all participants before the guilt hearing, the actions of those participants at the guilt hearing may have been affected by knowledge that television was coming.

We have examined the record with care in an effort to determine taint, if any, in the degree of guilt hearing, and we find none. The evidence of guilt of first degree murder was overwhelming. Petitioner had assaulted one officer with the officer's own gun, and had shot and killed another officer in the presence of witnesses. There was evidence that at the time of the crimes petitioner was neither drunk nor suffering from mental defect.

The taint, if found, must lie in inferences to be drawn from facts other than those directly connected with the crime itself. Appellant notes that the presiding judge was a candidate (although unopposed) for reelection in November, 1958, one month after the sentencing hearing. Furthermore, the county attorney was also a candidate for reelection in the month following the sentencing. Although the county attorney did not directly handle the prosecution of the petitioner, his interest in the outcome of the case was clearly evidenced by the fact the county attorney used the fact that his office prosecuted the petitioner in his campaign materials.

Further, certain statements during the sentencing hearing are said to reflect that petitioner's rights may have been prejudiced by the use of television equipment in the courtroom. For example, the trial judge, in response to the prosecutor's observation that the life sentence imposed for the murder charge could be commuted, commented that "I can fix that" and then ordered the sentences to run consecutively. In addition, Mrs. Shirley Wensel, petitioner's former wife, testified that, during the course of the sentencing proceeding, the trial judge mentioned that as long as he lived petitioner would never walk the streets again.

Such evidence is insufficient to show actual prejudice, and we believe that it does not establish a grave probability of unfairness in the degree of guilt proceedings.

We are constrained to agree with the district court that there was no impropriety or prejudice on the part of the judge or prosecutor in the degree of guilt hearing and that while the use of television was unwise it does not in the circumstances of this case call for issuance of the writ of habeas corpus.

The judgment of the district court is affirmed.