Dennis LUFKINS, Petitioner,

v.

Herman SOLEM, Warden; Mark V. Meierhenry, Attorney General, State of South Dakota, Respondents.

Civ. No. 81–3060.

United States District Court, D. South Dakota, C.D.

Jan. 10, 1983.

Richard P. Tieszen, Duncan, Olinger, Srstka, Lovald & Robbennolt, P.C., Pierre, S.D., for petitioner.

Mark V. Meierhenry, Atty. Gen., Mikal Hanson, Asst. Atty. Gen., Pierre, S.D., for respondents.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

Petitioner Dennis Ray Lufkins was convicted of voluntary manslaughter on July 1, 1980, in the Fifth Judicial Circuit Court of South Dakota. He is currently serving a term of life imprisonment in the South Dakota State Penitentiary. He has applied to this Court for a writ of habeas corpus as provided by 28 U.S.C. § 2254 and § 2241(c)(3). Petitioner contends that his Fourteenth Amendment rights to due process of law were violated by the procedures used to determine the voluntariness of a statement given by him to law enforcement authorities and that he was denied effective assistance of counsel at trial in violation of the Sixth Amendment. Having reviewed all the files and records of petitioner's state criminal case, and based further on its own evidentiary hearing, this Court determines that petitioner's rights under the United States Constitution have been violated.

### FACTS AND PROCEDURE

A drinking party on December 4, 1979, at the residence of Ernest Hayes in Sisseton,

South Dakota, culminated in the death of one of the participants, Sylvester Johnson. Clubbed in the head with an axe handle, Johnson died apparently while being driven to a hospital by Ernest Hayes. Mr. Hayes aborted his drive to the hospital and left the decedent on a church lawn. There the body was discovered on December 5, 1979. An autopsy determined that the victim's death was caused by a subdural hematoma, consistent with trauma inflicted by a blunt instrument.

On January 31, 1980, petitioner signed an inculpatory statement provided by Sisseton County Sheriff Neil Long and Division of Criminal Investigation Agent Delbert Peterson. Petitioner was, at that time, nine days into a sixty-day jail term in the Roberts County Jail for DWI. On April 21, 1980, petitioner was arraigned on both first-degree manslaughter and habitual criminal informations.[1] Petitioner pled not guilty to both charges.

On June 2, 1980, petitioner changed his plea to guilty to the manslaughter charge, bringing to a halt a jury trial then underway. Petitioner filed with the trial judge a handwritten list of objections to the proceedings against him. On June 12, 1980, the trial judge refused to accept petitioner's guilty plea and rescheduled his trial. Petitioner's two-day trial began June 30, 1980. Ernest Hayes, Eugene Hedine and Matthew Blue Dog testified that they spent December 4, 1979, drinking wine and rubbing alcohol with petitioner, Ruth Titus and the victim. All testified that petitioner hit the victim with an axe handle. Petitioner's incriminating statement was also received in evidence. Petitioner's sister testified that petitioner had been at her home from December 4 to December 5. Following his conviction of first degree manslaughter, petitioner pled guilty to the habitual offender

charge, whereupon he was sentenced to life imprisonment.

On appeal, the South Dakota Supreme Court resolved five issues against petitioner and affirmed his conviction. *State v. Lufkins,* 309 N.W.2d 331 (S.D.1981). Included among these issues were the claim that petitioner was denied due process of law by the admission of his incriminating statement without a prior determination of its voluntariness and the claim that petitioner was denied effective assistance of counsel. *Id.* at 333.

Petitioner filed in this Court for a writ of habeas corpus. This Court received briefs from both sides and directed the expansion of the record to include transcripts of proceedings in state court. 28 U.S.C. § 2254 Rule 7. Determining that petitioner's claim could not be resolved on the basis of the expanded record alone, *id.* Rule 8, this Court convened an evidentiary hearing on September 27, 1982.

## EXHAUSTION OF STATE CLAIMS

The United States Supreme Court has ruled that habeas petitioners must completely exhaust state remedies before asking a federal court to hear their claims. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). As stated above, the South Dakota Supreme Court ruled on both claims presented in petitioner's habeas petition when it decided his appeal from conviction.

 The exhaustion requirement is a rule of comity designed to prevent undue friction between state and federal courts. The requirement is satisfied when the federal claim has been fairly presented to the state courts. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438

---

1. Petitioner has been convicted of at least one other felony. Under South Dakota's "habitual offender" statute, a defendant with a history like petitioner's, i.e., "one who has been convicted of one or two prior felonies," shall, upon conviction of another felony, have the sentence for the principal felony enhanced "by changing the class of the principal felony to the next class which is more severe." SDCL § 22–7–7.

First degree manslaughter is a Class 1 felony in South Dakota. SDCL § 22–16–15. The maximum penalty for a Class 1 felony is life imprisonment and a $25,000 fine. SDCL § 22–6–1(2). The only class more severe than Class 1 is Class A. Class A felonies carry the penalty of mandatory life imprisonment with a potential for the imposition of the death penalty. SDCL § 22–6–1(1).

(1971). The claim presented to the federal court must be the same as the claim presented to the state court. *Id.* at 276, 92 S.Ct. at 512. There is no requirement that the state court have more than one opportunity to rule on the claim. *Thompson v. White,* 661 F.2d 103, 106 n. 6 (8th Cir.1981); *Mucie v. Missouri State Dept. of Corrections,* 543 F.2d 633, 636 (8th Cir.1976). Once petitioner has brought his claim to the highest state court, and that court has passed on the claim, a federal court may hear petitioner's application for a writ of habeas corpus. *Brown v. Allen,* 344 U.S. 443, 448 n. 3, 73 S.Ct. 397, 403 n. 3, 97 L.Ed. 469 (1953); *Irby v. Missouri,* 502 F.2d 1096, 1098 (8th Cir.1974); *Maggitt v. Wyrick,* 533 F.2d 383 (8th Cir.), *cert. den.,* 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976).

Petitioner has presented to the Supreme Court of South Dakota both claims included in his writ application. The Supreme Court has denied him relief from each claim. Since the highest court of South Dakota has ruled on petitioner's claims, petitioner has satisfied the exhaustion requirement, and his petition is properly before this court.

## VOLUNTARINESS OF ADMISSION

 A federal court hearing a state prisoner's petition for a writ of habeas corpus is not convened to retry the petitioner's case or to decide issues of state law. It has as its limited but important function to ensure that petitioner, in his trial, received the protections afforded by the United States Constitution. *In re Parker,* 423 F.2d 1021 (8th Cir.1970). Moreover, a federal court's power when hearing constitutional questions is plenary, *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963), and the federal court is not bound by a state court's adjudication of federal law. *Brown v. Allen, supra,* 344 U.S. at 506, 73 S.Ct. at 445. *See also, Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). On the other hand, absent constitutional deficiency, the habeas statute in 28 U.S.C. § 2254(d) instructs the federal court that state court factual findings are presump-

tively correct when supported by sufficient evidence and arrived at with procedural fairness. *In re Parker, supra,* 423 F.2d at 1024.

The Supreme Court has recently emphasized the limitations placed on federal courts when asked to make a collateral evaluation of state court findings under the habeas statute. *Sumner v. Mata,* 449 U.S. 539, 544–549, 101 S.Ct. 764, 767, 66 L.Ed.2d 722 (1981). The teaching of *Sumner* is that federal courts must explicitly state their reasons for differing from state court findings. *Id.* at 548, 101 S.Ct. at 770. *See e.g., Taylor v. Lombard,* 606 F.2d 371 (2d Cir. 1979), *cert. denied* 445 U.S. 946, 100 S.Ct. 1346, 63 L.Ed.2d 781 (1980). As developed below, this Court has reviewed the state trial proceedings and has determined that the state appellate court's finding that petitioner's trial judge made a determination as to the voluntariness of petitioner's statement not entitled to deference. 28 U.S.C. § 2254(d)(8).

The question presented by petitioner's voluntariness claim requires a determination of the procedures the Constitution mandates for a hearing on the voluntariness of a defendant's inculpatory statement. The importance of the voluntariness question cannot be overstated, because "[i]t is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession". *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964). The Supreme Court has stated: "A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." *Id.* at 381, 84 S.Ct. at 1783. In *Jackson,* the Supreme Court struck down a New York procedure which allowed the jury that was to determine a defendant's guilt simultaneously to determine the voluntariness of the defendant's confession. Emphasizing that the evaluation of an inculpatory statement

is always a sensitive task, the Supreme Court reasoned that placing the double determination of voluntariness and guilt in the same hands ran too great risk of collapsing the double into a single determination. *Id.* at 389–90, 84 S.Ct. at 1787. The Constitution does not nominate any particular agent to decide the voluntariness question. *Id.* at 391 n. 19, 84 S.Ct. at 1788 n. 19. To comport with the due process clause of the Fourteenth Amendment, however, the "procedures must . . . be fully adequate to ensure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." [2] *Id.* at 391, 84 S.Ct. at 1788.

■ The record of petitioner's trial reveals that the evidence on the voluntariness of petitioner's statement to Sheriff Long and Agent Peterson was taken during the course of the trial, in open court, and before the jury (Trial Transcript 79–104). The testimony by Sheriff Long regarding the voluntariness of this statement was elicited in the course of his testimony regarding the State's case in chief. Agent Peterson was then called to corroborate that part of the Sheriff's testimony involving the inculpatory statement. Petitioner's counsel did object to admission of the statement into evidence at the end of Sheriff Long's direct examination on the ground that the statement was involuntarily given. (TT 89).[3] The trial judge overruled the objection at that time, but her ruling came before cross-examination of the witness and before any testimony by Agent Peterson.

■ The hearing afforded petitioner does not measure up to the due process require-

ments enunciated in *Jackson*. The Supreme Court has called for a "clear-cut" determination of a statement's voluntariness. In petitioner's case, the trial court made no distinct finding as to the voluntariness of the statement. The South Dakota Supreme Court said of this procedure that "[t]he trial court, by allowing the statement into evidence, impliedly ruled that it was given voluntarily." *State v. Lufkins, supra,* 309 N.W.2d at 334. The Constitution and the United States Supreme Court require more than implicit rulings. The requirement is for a clear-cut determination which means that a criminal defendant has a right to expect that the agent deciding the issue of voluntariness will evaluate all the evidence concerning voluntariness before making an overt ruling on the voluntariness issue.

Even assuming that implicit rulings are adequate to meet due process standards, the timing of the judge's decision in petitioner's case undercuts any possibility that the judge's implicit ruling was arrived at reliably. The judge admitted petitioner's statement into evidence at the end of Sheriff Long's direct examination. The judge's ruling was made before petitioner's counsel had an opportunity to test the accuracy of the sheriff's account of how the statement was obtained. Fundamental to the adversary process is the submission of each witness's assertions to that great legal engine for the discovery of proof, cross-examination.[4]

As stated above, a defendant who claims that his statement was not voluntarily given "is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually

---

**2.** The South Dakota Supreme Court brought the state's criminal procedures into line with *Jackson* in *State v. Thundershield,* 83 S.D. 414, 160 N.W.2d 408 (1968). There the court held that proof of the voluntariness of a confession "must be made in an independent hearing of all the relevant facts outside the presence of the jury." *Id.* at 422, 160 N.W.2d at 412.

**3.** Besides the defense counsel's objection to the statement's admission into evidence, the trial court also had before it petitioner's own handwritten objection to the voluntariness of the

statement. The trial judge received this objection before the beginning of trial. Furthermore, petitioner himself challenged the veracity of Sheriff Long while the Sheriff was testifying (TT 85). There can be little doubt that petitioner raised the question of voluntariness or that the trial judge was aware of the issue. *See Wainwright v. Sykes, supra,* 433 U.S. at 91, 97 S.Ct. at 2508.

**4.** See 5 J. Wigmore, Evidence Section 1867 (Chadbourne Rev.1974).

and reliably determined." *Jackson v. Denno, supra,* 378 U.S. at 380, 84 S.Ct. at 1782. With the "determination" made before cross-examination of a witness, before hearing all the evidence the state would present regarding voluntariness, and before petitioner could present evidence of his own, the actuality and reliability of the factual investigation are too suspect to satisfy the requirements of due process. The underlying factual issues had scarcely been opened before the trial judge implicitly resolved them.

Respondents argue that the procedure employed by the trial judge in petitioner's case is saved by *Pinto v. Pierce,* 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967). There the Supreme Court upheld a conviction even though the trial judge held a voluntariness hearing in the presence of the jury. The judge who tried the petitioner in *Pinto* had repeatedly asked the petitioner's counsel if counsel had any objection to holding the hearing in the jury's presence. Defense counsel expressly waived any right to hold the hearing outside the jury's presence.

 At petitioner's trial, the prudence of holding the hearing in the jury's presence was never considered. There was no waiver. Whether *Pinto* would protect a trial judge's decision to hold a voluntariness hearing in the jury's presence when the judge knew of the defendant's objections to the voluntariness of his statement [5] would be a difficult question. That question is not, however, before this Court. The standard that applied in *Pinto* was "that a defendant's constitutional rights are violated when his challenged confession is introduced without a determination by the trial judge of its voluntariness after an adequate hearing." *Pinto v. Pierce, supra,* 389 U.S. at 32, 88 S.Ct. at 193. Without an adequate hearing and without an explicit determina-

tion by the trial judge, petitioner's case is not governed by *Pinto.*

The procedures used by the state to determine the voluntariness of petitioner's statement were constitutionally defective. The federal habeas court cannot, however, decide whether petitioner's statement was in fact voluntarily given. Principles of federalism constrain the federal habeas court to defer to the state so that it may "provide [petitioner] with that which he is constitutionally entitled—an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession." *Jackson v. Denno, supra,* 378 U.S. at 393–94, 84 S.Ct. at 1789. Petitioner's claim shall, therefore, be remanded to the state judicial system so that he may receive a hearing on the voluntariness of his statement as provided by state procedures.[6] *See id.* at 392–96, 84 S.Ct. at 1789–91.

## EFFECTIVE ASSISTANCE OF COUNSEL

 The second claim presented by petitioner's habeas application is that he lacked effective assistance of counsel in violation of the Smith Amendment as made applicable to the states by the Fourteenth Amendment. Because counsel is presumed to be competent, a petitioner alleging ineffective assistance of counsel shoulders a heavy burden when challenging the effectiveness of his representation. *Cox v. Wyrick,* 642 F.2d 222, 225 (8th Cir.), *cert. den.,* 451 U.S. 1021, 101 S.Ct. 3013, 69 L.Ed.2d 394 (1981); *Thomas v. Wyrick,* 535 F.2d 407, 413 (8th Cir.), *cert. den.,* 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976). Moreover, a federal court reviewing habeas corpus petitions is bound by the factual findings made by state courts unless one of the circumstances encompassed in 28 U.S.C. § 2254(d) applies.

---

**5.** See *supra* note 3.

**6.** Remanding petitioner's case for an adequate voluntariness determination is not a sterile gesture that would merely save constitutional appearances. As noted *infra,* the inculpatory statement had real impact on petitioner's trial. Under the standard adopted by the South Dakota Supreme Court, the burden is placed upon

the State to prove beyond a reasonable doubt that the statement was voluntarily made. *State v. Stumes,* 90 S.D. 382, 390 n. 4, 241 N.W.2d 587, 591 n. 4 (1976); *State v. Kiehn,* 86 S.D. 549, 199 N.W.2d 594, 598 (1972); *State v. Thundershield,* 83 S.D. 414, 422, 160 N.W.2d 408, 412 (1968).

*Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

The South Dakota Supreme Court ruled that petitioner was not denied effective assistance of counsel after "carefully review[ing] the particulars which [petitioner] contends indicate the ineffectiveness of his trial counsel." *State v. Lufkins, supra,* 309 N.W.2d at 337. The South Dakota Supreme Court appears to have based its finding on the transcripts of petitioner's trial and hearings. On its own review of that record, this Court concluded that the record was not adequately developed to support a determination of trial counsel's effectiveness. 28 U.S.C. § 2254(d). *See also Townsend v. Sain, supra,* 372 U.S. at 313, 83 S.Ct. at 757. An evidentiary hearing held before this court compels the conclusion that the state court findings are not entitled to a presumption of correctness. 28 U.S.C. § 2254(d). *See also Sumner v. Mata, supra,* 449 U.S. at 552, 101 S.Ct. at 772. Petitioner has carried his burden "by convincing evidence that the factual determination by the state court was erroneous." 28 U.S.C. § 2254(d).

Petitioner's trial counsel is an experienced attorney who has been a member of the South Dakota bar for thirty-five years. He has represented a significant number of criminal defendants in that time (Habeas Corpus Evidentiary Transcript 46). A court reviewing a defense attorney's work should not sit merely to second-guess the attorney with the benefits of hindsight. *Thomas v. Wyrick, supra,* 535 F.2d at 413. Even with

due regard to his experience, however, counsel's conduct of the defense must still meet the standard that an attorney should "exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *United States v. Easter,* 539 F.2d 663, 666 (8th Cir.1976), *cert. den.,* 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977). *Accord Cox v. Wyrick, supra,* 642 F.2d at 226. Under the circumstances of this case, petitioner's counsel did not meet this standard.

At a minimum, to prove ineffectiveness of counsel, petitioner must show that counsel was derelict in some duty. *Zaehringer v. Brewer,* 635 F.2d 734, 737 (8th Cir.1980). For a lawyer to fail to exercise his professional judgment on behalf of a client is a serious breach of his duty to that client.[7] *Thomas v. Wyrick, supra,* 535 F.2d at 413. In petitioner's case, defense counsel was faced with defending a client who had given a statement to the authorities implicating himself in a homicide. At the time of the trial counsel knew[8] that his client maintained that the statement was neither voluntarily given nor representative of his version of the events of December 4, 1979. Counsel described his trial strategy as one based on the theory that his client did not strike the victim (HCET 57), and he admits the voluntariness of his client's statement to the authorities was material to the case (HCET 61).

The steps open to counsel were clearly defined at the time of defendant's trial:

the list of objections with the help of counsel and that he gave counsel the list to deliver to the judge (HCET 19, 72).

At the time of petitioner's trial, moreover, counsel not only was aware of the objections but also asserted that "I had the defendant write out a statement which the Court has just read...." This statement, written in petitioner's "own handwriting asking that there be several things done in this case," is the list of objections filed with the trial court (Transcript of Proceedings, June 12, 1980 [Withdrawal of Plea] 5). Prominently included in this list was petitioner's objection to the voluntariness of his inculpatory statement. This Court finds that counsel's earlier representation as to his participation in drawing up the list more credible.

---

**7.** The ABA Code of Professional Responsibility provides that a lawyer should represent his client zealously within the bounds of the law. Canon 7. Under a lawyer's duty to represent his client competently (Canon 6), the Code provides that a lawyer should not "[h]andle a legal matter without preparation adequate in the circumstances." D.R. 6–101(A)(2). See SDCL Section 16–18 Appx.

**8.** At the evidentiary hearing before this Court, defense counsel asserted that he had never before seen the list of objections that petitioner wrote to his trial judge. He denied that petitioner had handed him the list to transmit to the judge or that he knew its contents (HCET 50, 55). Counsel's statements directly contradicted petitioner, who testified that he drew up

When a confession or incriminating statement allegedly made by the accused is offered by the prosecution and objected to, the state has the burden of proving beyond a reasonable doubt the same was freely and voluntarily made. This proof must be made in an independent hearing of all relevant facts outside the presence of the jury. At this hearing the defendant may testify and be cross-examined as to the issue of voluntariness without jeopardy or waiver of his right to remain silent at the trial.

*State v. Thundershield,* 83 S.D. 414, 422, 160 N.W.2d 408, 412 (1968). A reasonably competent attorney exercising minimal skill in the representation of petitioner would have sought to test the voluntariness of his client's statement under the provisions of *Thundershield.* Counsel accurately testified that he objected to the voluntariness of the statement at trial, but that cursory objection did not satisfy his duty for competent representation. As counsel himself characterized the objection, it was a "catch-all objection"' (HCET 52). The procedures made available to criminal defendants by *Thundershield* implicate fundamental constitutional rights. Regardless of the propriety of holding the voluntariness hearing in the jury's presence, effective assistance of counsel would mean that the issue was at least raised. A perfunctory objection such as counsel's in this case does not meet basic standards of representation. The Court can only conclude that counsel did not make a specific objection on due process grounds because counsel was unaware of the due process dimension of holding the voluntariness hearing in the jury's presence.

An attorney has a duty to "exert his best efforts to ensure that decisions of his client are made only after the client has been informed of relevant considerations. A lawyer ought to initiate this decision-making process if the client does not do so." ABA Code of Professional Responsibility E.C. 7–8. Petitioner himself initiated the decision-making process but received little assistance from his counsel. Counsel did not inform petitioner that he had the opportunity to challenge the voluntariness of his statement in a separate hearing or that he could testify at such a hearing without jeopardizing his right to remain silent at trial.[9] Counsel's failure seriously undercut his client's effort to defend himself.

An attorney does not fail "to render effective legal service if he fails to discuss with his client a procedural alternative which a reasonable attorney would consider having little or no likelihood of success." *Zaehringer v. Brewer, supra,* 635 F.2d at 737. *See also Benson v. United States,* 552 F.2d 223, 225 (8th Cir.), *cert. den.* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977). Counsel in this case seems to have formed the opinion that his client's statement was voluntarily given (HCET 52).[10] Indeed, at trial, counsel bolstered Agent Peterson's statement as to voluntariness (TT 102). The instances in which the Eighth Circuit upheld an attorney's decision not to prosecute available procedures were instances where such prosecution was obviously doomed to failure. Petitioner's voluntariness claim was not so obviously condemned.

■■■ At the evidentiary hearing before this Court, the evidence raised a real question as to the voluntariness and accuracy of the statement. Certainly, resolution of the voluntariness of the statement is beyond the province of this Court hearing a habeas petition, and the Court makes no attempt to resolve that question now. In light of the

---

9. Counsel testified that he could not recall whether he informed petitioner of his right to testify at a suppression hearing but that he ordinarily touched on that matter (HCET 54). Petitioner testified that his attorney never informed him of his options (*id.* at 12). Counsel did not take notes of his conversations with petitioner (*id.* at 54), and this Court finds that petitioner's recollection is more likely correct.

10. At the evidentiary hearing, this Court made a provisional ruling sustaining an objection to a question that solicited counsel's opinion as to the voluntariness of the statement. That ruling is now revoked, and counsel's answer that he believed the statement to be voluntary is part of the record.

heavy burden of proof placed on the state,[11] however, the testimony does demonstrate that petitioner's challenge is not so utterly frivolous as to presage sure failure if pursued. A reasonable attorney would not consider it as having little or no likelihood of success, and petitioner's counsel's failure to pursue it cannot be saved by calling it strategy. *See Collins v. Auger,* 577 F.2d 1107 (8th Cir.1978).

Petitioner's demonstration that he was ineffectively represented by counsel is not enough to carry his burden. Petitioner must also show that his counsel's shortcomings prejudiced his defense. *Thomas v. Wyrick, supra,* 535 F.2d at 414. *See also Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. at 2498 (1977). To show prejudice, petitioner does not have to prove that effective representation would have led to his acquittal. *Thomas v. Wyrick, supra,* 535 F.2d at 414. The precise standard of review is unsettled. *Collins v. Auger, supra,* 577 F.2d at 1110. The most demanding standard requires the reviewing court to evaluate the entire record to determine whether the other evidence presented at trial would negate any possible prejudice from admission of the inculpating statement. *Id.* at 1110–11 (citing *Wainwright v. Sykes, supra* ). Petitioner has met this standard.

The evidence produced by the State against petitioner consisted primarily of testimony by three companions who supposedly witnessed the lethal events of December 4, 1979. None of these witnesses were particularly reliable. All had been drinking heavily from at least the early hours of December 4, and all had leaden memories of the evening.[12] Petitioner's inculpatory statement in these circumstances surely took on particular significance. The trial did not produce a record in which "[t]he other evidence of guilt presented at trial ... was substantial to a degree that would negate any possibility of actual prejudice resulting ... from the admission of [the] inculpatory statement." *Wainwright v. Sykes, supra,* 433 U.S. at 91, 97 S.Ct. at 2508. Counsel's failure to mount any challenge to the voluntariness of petitioner's inculpatory statement was, therefore, significantly prejudicial to petitioner's right to a fair trial.

## CONCLUSION

The evidence compels the conclusion that a writ of habeas corpus is appropriate. The findings regarding effective assistance of counsel take petitioner's relief beyond that stated in the first part of this opinion. Besides a suppression hearing, petitioner is entitled to a new trial or release from prison. The State of South Dakota will therefore be given a reasonable opportunity to re-try petitioner. If the State fails to take advantage of this opportunity, the writ of habeas corpus will issue. This memorandum constitutes the Court's findings of fact and conclusions of law.

---

11. See *supra,* note 6.

12. Petitioner's counsel did not move to have the witnesses sequestered as is permitted by SDCL § 19–14–29. Counsel knew that the recollection of the witnesses against his client was unsure (Transcript of Preliminary Hearing 38).

Failure to move that these witnesses not have the chance to listen to one another's testimony, is another instance of counsel's failure to exercise his professional judgment in his client's behalf. *See supra* note 7 and accompanying text.