STATE of South Dakota, Plaintiff
and Appellee,

v.

Dennis LUFKINS, Defendant
and Appellant.

No. 14781.

Supreme Court of South Dakota.

Considered on Briefs Oct. 23, 1985.

Decided Jan. 29, 1986.

Robert B. Vrooman, Asst. Atty. Gen., Pierre, on the brief: Mark V. Meierhenry, Atty. Gen., Pierre, for plaintiff and appellee.

David Alan Palmer, of Strange & Palmer, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

## ACTION

This is a criminal appeal from a Judgment of Conviction which found Dennis R. Lufkins (appellant) guilty of first-degree manslaughter and guilty of being an habitual offender. Appellant was sentenced to life imprisonment. We affirm.

## FACTS

The facts and procedural history of this case are well documented. *See State v. Lufkins,* 309 N.W.2d 331 (S.D.1981); *Lufkins v. Solem,* 554 F.Supp. 988 (D.S.D. 1983); and *Lufkins v. Solem,* 716 F.2d 532 (8th Cir.1983).

On December 4, 1979, appellant, Ernest Hayes (Hayes), Eugene Hedine (Hedine), Sylvester Johnson (Johnson), Matthew Blue Dog (Blue Dog), and Ruth Titus were drinking at Hayes' residence in Sisseton, South Dakota. A fight broke out between Johnson and appellant and the latter struck Johnson in the head with an ax handle. After being struck, Johnson fell, was helped up, fell again, and was helped up again. Hayes took Johnson to the hospital but en route thereto, Hayes observed that Johnson had died. Hayes then decided to deposit Johnson's body on a church lawn.

While in jail on an unrelated charge, and in the presence of law enforcement officers, appellant made and signed an inculpatory statement regarding Johnson's death. On June 2, 1980, after the commencement of a jury trial, appellant pleaded guilty to first-degree manslaughter and thereby aborted the trial. Appellant, however, was later permitted to withdraw his guilty plea. A second trial resulted in appellant's conviction for first-degree manslaughter. Thereafter, appellant pleaded guilty to an habitual offender charge.

On appeal to this Court, appellant contended, inter alia, he was (1) denied due process by the admission of his inculpatory statement without a prior determination of its voluntariness outside the jury's presence and (2) denied effective assistance of counsel. We rejected appellant's conten-

tions and affirmed his conviction. *State v. Lufkins,* 309 N.W.2d 331 (S.D.1981) (*Lufkins* I).

Appellant then filed a writ of habeas corpus in federal district court asserting the same ineffective assistance of counsel and voluntariness claims previously rejected by this Court. The federal district court granted appellant's habeas corpus writ holding that the trial court did not make a distinct determination concerning the voluntariness of the statement and that appellant had been denied effective assistance of counsel because counsel failed to mount any challenge to the voluntariness of appellant's inculpatory statement. *Lufkins v. Solem,* 554 F.Supp. 988, 996 (D.S.D.1983) (*Lufkins* II). Therein, the federal district court also opined:

> The evidence produced by the State against petitioner consisted primarily of testimony by three companions who supposedly witnessed the lethal events of December 4, 1979. None of these witnesses were particularly reliable. All had been drinking heavily from at least the early hours of December 4, and all had leaden memories of the evening.[12]

*Id.* Footnote 12 reads:

> Petitioner's counsel did not move to have the witnesses sequestered as is permitted by SDCL § 19–14–29. Counsel knew that the recollection of the witnesses against his client was unsure.... Failure to move that these witnesses not have the chance to listen to one another's testimony, is another instance of counsel's failure to exercise his professional judgment in his client's behalf....

*Lufkins* II was affirmed in *Lufkins v. Solem,* 716 F.2d 532 (8th Cir.1983) (*Lufkins* III), *cert. denied,* — U.S. —, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984). In so affirming, the Court of Appeals stated:

> Other than the incriminating statement, the only evidence of guilt was the testimony of three companions who purportedly witnessed Lufkins hit the decedent with an axe handle on the evening of December 4, 1979. However, as empha-

sized by the district court, these witnesses were not particularly reliable because they had been drinking heavily from the early hours of December 4, and they had difficulty recalling the events of that evening. Furthermore, apart from the prejudice caused by counsel's failure to challenge the admission of the incriminating statement, counsel undercut Lufkins' trial defense by failing to sequester these three eyewitnesses so that they could not listen to one another's testimony. We believe this was further evidence of counsel's prejudicial failure to exercise his professional judgment in his client's behalf.

*Id.* at 541.

By an Order dated July 6, 1984, the South Dakota trial court decreed that appellant be retried. Thereafter, various motions were filed with the trial court. As relevant herein, these motions included a motion by appellant to suppress his inculpatory statement and a motion by the prosecution to use the transcript testimony of Hayes, Blue Dog, and Hedine, taken at the previous trial, because these witnesses were unavailable to testify.

A motion hearing was held on October 4, 1984. Four witnesses testified thereat and numerous exhibits were received in evidence for the purposes of the hearing. Thereafter, the trial court denied appellant's motion to suppress and granted the prosecution's motion to use the transcript testimony of the unavailable witnesses.

Jury trial was commenced on October 31, 1984. On November 5, 1984, the jury returned a verdict which found appellant guilty of first-degree manslaughter. On this later date, appellant dismissed his counsel, demanded immediate arraignment on an habitual offender charge, pleaded guilty thereto and requested immediate sentencing. A sentence of life imprisonment was then imposed. On November 7, 1984, appellant moved for a new trial; appellant filed his notice of appeal on November 16, 1984, addressing the entire Judgment of Conviction and sentence imposed.

## DECISION

### I.

DID THE TRIAL COURT PROPERLY ADMIT THE 1980 TRIAL TRANSCRIPT TESTIMONY OF HAYES, BLUE DOG, AND HEDINE? WE HOLD THAT IT DID.

The Sixth Amendment to the United States Constitution guarantees the accused in criminal prosecutions the right to confront the witnesses against him and this guarantee is obligatory on the states via the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). South Dakota Constitution Article VI, § 7, also guarantees the accused the right "to meet the witnesses against him face to face...." These protections, however, are not absolute. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *State v. Davis,* 293 N.W.2d 885 (S.D.1980). A traditional exception to the confrontation requirement is when "a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." *Barber v. Page,* 390 U.S. 719, 722, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255, 258 (1968). *See also, State v. Brim,* 298 N.W.2d 73, 80 (S.D.1980). This traditional exception to the confrontation requirement is codified in SDCL 19–16–30 and this statute provides:

> Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, is not excluded by § 19–16–4 if the declarant is unavailable as a witness and if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Thus, if a witness testified at a previous hearing or trial in which the defendant had an opportunity and similar motive to devel-

op that testimony by cross-examination, and the witness is unavailable for a subsequent retrial, and the prosecution has made a good-faith effort to procure his presence, the witness' previous testimony is admissible at the subsequent trial and it does not offend constitutional guarantees. *See Barber*, 390 U.S. 719, 88 S.Ct. 1318; *Davis*, 293 N.W.2d 885; and SDCL 19–16–30.

Appellant contends, however, that the State has failed to prove that Hayes, Blue Dog, and Hedine were unavailable for his 1984 trial. With this contention, we disagree.

■ At the time of trial, Matthew Blue Dog was a patient at the Tekakwitha Nursing Home in Sisseton. Blue Dog's medical diagnosis was that he suffered Systemic Lupus Erythematosis, Chronic Alcoholism, and an organic brain syndrome known as Dementia. In July 1984, Blue Dog was examined by Russell C. Sunderland, M.S.W. Sunderland testified at the motion hearing and also submitted a Mental Status Assessment of Blue Dog. The substance of the testimony and the assessment was that Blue Dog did not remember the day of Johnson's death or that Johnson was dead; that Blue Dog had difficulty maintaining his attention; that Blue Dog's memory was not vivid and he was unable to recall dates and places; that Blue Dog's memory was not in chronological order and he seemed to experience some memory blocking and inability to recall in detail; that Blue Dog experienced visual hallucinations and exhibited bizarre behavior in the past; and that Blue Dog had a slowing of thought, sparsity of speech and a loss of intellectual functioning. Based on the above, the trial court found Blue Dog incompetent to testify and unavailable for trial.

Generally, every person is competent to be a witness, SDCL 19–14–1, if they have personal knowledge of the matter, SDCL 19–14–2, and they have "sufficient understanding to receive, remember, and narrate impressions, and [are] sensible to the obligation of an oath." 81 Am.Jur.2d *Witnesses* § 69, at 109 (1976). "The determination of the witness' competency is within the

discretionary power of the trial judge and may be reversed only upon a showing of abuse of discretion." *State v. Phipps*, 318 N.W.2d 128, 131 (S.D.1982). The testimony and evidence presented at the motion hearing sufficiently established that Blue Dog had lost his personal knowledge of the events in question and lacked the understanding to receive, remember, and narrate any remaining impressions. Based upon a review of the record, we find no abuse of discretion.

■ As for Ernest Hayes and Eugene Hedine, both of these men were on Indian trust land and beyond subpoena power. Hayes was on trust land near Sisseton and Hedine was on trust land in North Dakota. It is beyond contention that South Dakota officials and courts do not have jurisdiction over Indian trust lands. *DeCoteau v. District County Court*, 420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975); *Annis v. Dewey County Bank*, 335 F.Supp. 133 (D.S.D. 1971). *See also, Comm'r of Taxation v. Brun*, 286 Minn. 43, 174 N.W.2d 120 (1970).

Two subpoenas, however, had been issued for Hayes but Sheriff Neil Long was unable to properly serve Hayes off of trust land. Sheriff Long left word with Hayes' friends and relatives that Hayes was to be a witness at appellant's trial. The prosecutor also sent Hayes a certified letter requesting his presence at appellant's trial and providing immunity from a then outstanding bench warrant. Numerous inquiries were made by teletype and phone concerning Hedine's whereabouts and these activities continued up until the day of trial. We reject appellant's contentions that Sheriff Long should have corralled Hayes and Hedine on trust land and dragged them back to Sisseton. We also reject appellant's contention that formal proceedings should have been invoked to compel Hayes' and Hedine's presence at trial. Appellant fails to direct this Court to any such procedure and the Reciprocal Extradition Agreement between the Sisseton-Wahpeton Sioux Tribe and the State of South Dakota was not executed until after appellant's trial and it only concerns the

extradition of "fugitives from justice." Under the facts and circumstances of this case, we affirm the trial court's determination that Hayes and Hedine were unavailable and that the prosecution made good-faith efforts to procure their presence at trial.

Appellant next contends that because he was denied effective assistance of counsel at his 1980 trial, the trial transcript testimony of Hayes, Hedine, and Blue Dog lacks the required indicia of reliability. In *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1980), the Supreme Court stated:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness. (Footnote omitted.)

In *Lufkins* II and III, the federal district court and the Court of Appeals held that appellant had been denied the effective assistance of counsel because counsel, inter alia, failed to sequester the witnesses.* In so ruling, as quoted above, both courts noted that Hayes, Hedine, and Blue Dog were not "particularly reliable" witnesses. These federal courts, however, did not rule that appellant was denied effective assistance of counsel because appellant's 1980 trial counsel's cross-examination of these witnesses was defective.

In *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972), the defendant had been convicted of murder in a state trial. Years later, the defendant was released on a habeas petition by a federal court which found that defendant had ineffective assistance of counsel. At a second state murder trial, the trial transcript testimony of a witness at the first trial was received into evidence because that witness was residing overseas. The Supreme Court rejected the contention that because the defendant did not receive effective assistance of counsel at the first trial, the testimony of the unavailable witness therefore lacked indicia of reliability. The ineffective assistance claim, as in the present case, was based on factors other than counsel's cross-examination. The Supreme Court therefore reviewed the cross-examination performed at the first state trial and concluded that the transcript of the unavailable witness' testimony bore sufficient indicia of reliability and provided the new trier of fact with a basis for evaluating its truth. *Id.*, 408 U.S. at 216, 92 S.Ct. at 2314–15, 33 L.Ed.2d at 303.

■ Upon a review of the cross-examination of Hayes, Hedine, and Blue Dog, performed at the 1980 trial, we conclude that the transcript of their testimony bears sufficient indicia of reliability and thus provided the 1984 jury with a basis for evaluating its truth as the confrontation guarantees require.

The witnesses' recorded testimony was elicited at a trial on the merits, conducted in a court of record before a jury. Appellant was represented by counsel. Counsel had every opportunity to cross-examine the witnesses as to their statements. Counsel was not limited in any way as to the scope or nature of his cross-examination and counsel cross-examined the witnesses. Leading questions were used and the witnesses' sincerity, perception, veracity, memory, sobriety, intentions, and truthfulness were challenged. The details of the incident were explored and other scenarios suggested. The witnesses' statements were substantially similar and consistent throughout all proceedings. Counsel's

---

* These determinations are not supported by the original record. On the contrary, the present record herein contains the affidavits of the 1980 Roberts County Clerk of Courts, the 1980 Roberts County Sheriff, the 1980 Roberts County Deputy State's Attorney, and the 1980 trial court reporter, which state that Hedine, Blue Dog, and Hayes "were in the courtroom only to testify and ... were not present in the courtroom to hear the other two witnesses testify."

cross-examination was not ineffective assistance, there was an adequate opportunity to cross-examine, counsel availed himself of that opportunity, and the transcript testimony bears sufficient indicia of reliability and afforded the 1984 jury with a satisfactory basis for evaluating its truth. *Mancusi*, 408 U.S. at 216, 92 S.Ct. at 2314–15, 33 L.Ed.2d at 303. We reject appellant's contentions to the contrary. The trial court did not err by permitting the use of the 1980 trial transcript testimony.

## II.

### DID THE TRIAL COURT ERR IN ADMITTING APPELLANT'S INCULPATORY STATEMENT? WE HOLD IT DID NOT.

■ Appellant contends, for various reasons, that the trial court erred in admitting his inculpatory statement into evidence. We disagree.

On January 31, 1980, appellant, while serving a sentence on another charge, made and signed a statement which stated that he had struck Johnson in the head with an ax handle. Prior to this statement, however, appellant was informed by the investigating officers, Sheriff Neil Long and D.C.I. Agent Delbert Petersen, that they were investigating Johnson's death. Appellant was informed of his rights and indicated that he understood. Appellant also read aloud and signed a document denominated "Statement of Rights, Acknowledgment and Waiver of Rights." This document outlined appellant's rights and waived enforcement thereof. Appellant's signature was witnessed by Sheriff Long and Agent Petersen.

During the interrogation, appellant did not appear to be intoxicated or under the influence of drugs. He was not threatened, coerced, or harassed, and no promises were made to appellant for the purpose of obtaining a statement. The entire interrogation session lasted less than an hour and appellant was not new to the criminal justice system. On prior occasions, appellant had been informed of and waived his rights and a subsequent examination revealed

that appellant understood his rights and the particulars of the criminal justice system. The officers also believed appellant understood his rights.

Appellant made an oral statement and Agent Petersen typed it onto a document entitled "Voluntary Statement." This document, and another Voluntary Statement document advised appellant of his rights and waived the same. Appellant read these aloud, signed them, and initialed inserts and corrections. Appellant's signatures were again witnessed by Sheriff Long and Agent Petersen.

The trial court found beyond a reasonable doubt that based on the totality of the circumstances, appellant understood the *Miranda* warnings, and the nature of his rights and knowingly, intelligently, and voluntarily waived his rights. Such findings are binding upon this Court unless clearly erroneous. *See State v. Woods*, 374 N.W.2d 92, 98 (S.D.1985); *State v. Faehnrich*, 359 N.W.2d 895, 898 (S.D.1984); and *State v. Janis*, 356 N.W.2d 916, 919 (S.D. 1984). Based upon our review of the record, we cannot conclude that the trial court was clearly erroneous.

## III.

### IS APPELLANT'S CONVICTION SUPPORTED BY THE EVIDENCE? WE HOLD THAT IT IS.

■ Appellant asserts that there is insufficient evidence of a direct causal nexus between Johnson's death and being struck with an ax handle by appellant. Appellant contends that Johnson's death could be the result of numerous occurrences.

"In determining the sufficiency of the evidence on appeal the only question presented to this court is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilty beyond a reasonable doubt." *State v. Shank*, 88 S.D. 645, 650, 226 N.W.2d 384, 387 (1975).

The record reveals that Johnson was struck on the right side of the head with an

ax handle by appellant. That after being struck, Johnson fell to his knees, was helped up, fell again, and was helped up once more. This conduct was fairly typical of a person who had received a fatal head injury. Johnson died from a subdural hematoma or hemorrhage of the brain. A pathologist testified at trial that only one injury to Johnson's head would have caused a subdural hematoma. That injury was on the right side of Johnson's head and was the result of a blunt force trauma to the head. The pathologist stated that a blow from an ax handle could have caused this injury and discounted other events as the cause thereof. In light of this evidence and the entire record, we hold that there is sufficient evidence to support the jury verdict.

Affirmed.

FOSHEIM, C.J., MORGAN and WUEST, JJ., and HERTZ, Circuit Judge, Acting as Supreme Court Justice, concur.