**Dennis LUFKINS, Appellee,**

v.

**Herman SOLEM, Warden; Mark Meierhenry, Attorney General of South Dakota, Appellants.**

**No. 83–1078.**

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1983.

Decided Sept. 12, 1983.

Mark V. Meierhenry, Atty. Gen., Mikal Hanson, Asst. Atty. Gen., Pierre, S.D., for appellants.

Richard P. Tieszen, Pierre, S.D., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, and ROSENN,* Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Dennis Lufkins, a life-term prisoner convicted of voluntary manslaughter in a South Dakota state trial court, sought a writ of habeas corpus in the federal district court, 554 F.Supp. 988,[1] alleging: (1) he was denied due process because inadequate procedures were used by the trial court to determine the voluntariness of an incriminating statement he gave to law enforcement authorities; and (2) he was denied effective assistance of counsel. After an evidentiary hearing, the district court issued an order granting Lufkins habeas relief. The court ruled that under *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), Lufkins was entitled to a new, full and fair hearing on the voluntariness of the incriminating statement. The court also ruled that Lufkins was entitled to a new trial or release from prison because he was denied effective assistance of counsel. South Dakota now appeals these rulings. We affirm.

---

* The Honorable Max Rosenn, Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

## I.

During a wine drinking party on December 4, 1979, at the residence of Ernest Hayes in Sisseton, South Dakota, Sylvester Johnson was clubbed in the head with an axe handle. Johnson apparently died while Ernest Hayes was driving him to the hospital. Hayes aborted his drive to the hospital, leaving the then deceased Johnson on a church lawn. The decedent's body was discovered on December 5, 1979. An autopsy determined that death was caused by a subdural hematoma, consistent with trauma inflicted by a blunt instrument.

On January 31, 1980, Lufkins signed an inculpatory statement provided by Sisseton County Sheriff Long and Division of Criminal Investigation Agent Peterson. The signed statement indicated that Lufkins had hit Johnson during the wine drinking party of December 4, 1979. At the time he signed the statement, Lufkins was serving a sixty-day DWI sentence.

On April 21, 1980, Lufkins was arraigned on both first-degree manslaughter and habitual criminal informations. Lufkins pled not guilty to both charges. Prior to his trial, and in open court Lufkins personally filed with the trial court a handwritten list of objections to the proceedings against him. In this list, Lufkins stated that he had not hit the decedent, that the officers told him that "things would go easy for him" if he signed the incriminating statement, that the officers were "hollering at him," and that his state of mind was not clear when he signed the statement. Despite learning about this list of objections, Lufkins' counsel made no pretrial motion to suppress the incriminating statement as allegedly involuntarily given.

During Lufkins' two-day trial, which began on June 30, 1980, Ernest Hayes, Eugene Hedine and Matthew Blue Dog testified that they spent most of the day on

---

1. The Honorable Donald J. Porter, United States District Judge, District of South Dakota.

December 4, 1979, drinking wine and rubbing alcohol with Lufkins, Ruth Titus, and the victim Johnson. All three testified that Lufkins struck the victim with an axe handle. However, Lufkins' sister testified that Lufkins had been at her home from December 4 to December 5, 1979.

The trial court also admitted Lufkins' incriminating statement into evidence. The State's evidence on the voluntariness of this statement, which included the testimony of Sheriff Long and Agent Peterson, was taken during the course of the trial, in open court, and in the jury's presence. Lufkins' trial counsel failed to request an independent voluntariness hearing outside of the jury's presence. Sheriff Long's testimony that the statement was voluntarily given was elicited during the State's case in chief. While Sheriff Long was testifying, Lufkins rose to his feet and challenged the Sheriff's veracity. The trial court also had before it Lufkins' pretrial handwritten objections to the voluntariness of the statement. After Sheriff Long finished testifying on direct examination, Lufkins' counsel objected to the admission of the statement into evidence on the ground that it was involuntarily given. The trial judge overruled the objection and admitted the statement into evidence. This ruling came before any cross-examination of the sheriff, before any corroborating testimony by Agent Peterson, and before Lufkins was given an opportunity to present any rebuttal evidence. Lufkins was convicted of first degree manslaughter; he also pled guilty to the habitual offender charge and was sentenced to life imprisonment.

On direct appeal, a divided South Dakota Supreme Court rejected all of Lufkins' claims and affirmed his conviction. *State v. Lufkins,* 309 N.W.2d 331 (S.D.1981) (Morgan and Foshiem, JJ. dissenting). Included among these rejected claims were Lufkins' claim that he was denied due process by the admission of his incriminating statement without a prior determination of its voluntariness outside of the jury's presence and his claim that he was denied effective assistance of counsel. *Id.* at 333–34, 336–37.

In rejecting Lufkins' voluntariness claim, the South Dakota Supreme Court was apparently under the mistaken impression that the trial court admitted the statement after Sheriff Long had been cross-examined. The supreme court stated:

> After Sheriff Long was extensively questioned in the presence of the jury by both the State and appellant regarding the voluntary nature of the statement, the trial court admitted the statement into evidence over appellant's objection.

309 N.W.2d at 333. The supreme court went on to find that "the trial court, by allowing the statement into evidence, impliedly ruled that it was given voluntarily." *Id.* at 334. The Court, citing *Pinto v. Pierce,* 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967), also found that: "[b]y not making the appropriate objection, appellant's trial counsel consented to the taking of evidence in the jury's presence on the voluntariness of the statement." The court then concluded that "[Lufkins] was not denied his constitutional rights by the admission of the statement into evidence." *Id.* at 335.

Lufkins thereafter filed his writ of habeas corpus in the federal district court, raising the same voluntariness and ineffective assistance of counsel claims that had been rejected by the South Dakota Supreme Court. The district court received briefs from both sides and granted Lufkins' motion for expansion of the record pursuant to 28 U.S.C. § 2254, Rule 7, to include transcripts of all state court proceedings. The district court then determined that Lufkins' ineffective assistance claim could not be resolved on the basis of the expanded record alone and therefore granted an evidentiary hearing pursuant to 28 U.S.C. § 2254(d). At the evidentiary hearing, Lufkins' trial counsel was called as a witness by the State and cross-examined at length by Lufkins' habeas counsel.

The district court issued a memorandum opinion granting Lufkins' writ of habeas corpus. First, the district court, relying on *Jackson v. Denno,* 378 U.S. 368, 380, 84 S.Ct. 1774, 1782, 12 L.Ed.2d 908 (1964), concluded that Lufkins was denied a full and fair

hearing. The district court specifically found: (1) the trial court made no distinct finding of the voluntariness of the statement; and (2) the statement was admitted before cross-examination of Sheriff Long and before Lufkins could present evidence of his own. The district court also noted that while *Pinto v. Pierce,* 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967), held that a defendant could expressly waive his right to a voluntariness hearing outside the jury's presence, there was no such waiver here; and, regardless of the propriety of the jury's presence, Lufkins was still denied an adequate and reliable voluntariness hearing. The district court therefore remanded to the state judicial system so that Lufkins could receive a full and fair voluntariness hearing.

Second, the district court concluded that Lufkins was denied effective assistance of counsel, entitling him to a new trial. The district court found that a reasonably competent attorney exercising minimal skill in the representation of his client would have sought to test the voluntariness of Lufkins' statement by requesting an independent voluntariness hearing outside of the jury's presence, a procedure made available to criminal defendants in *State v. Thundershield,* 83 S.D. 414, 160 N.W.2d 408, 412 (1968). The district court further emphasized that competent counsel at the very least would have raised a due process objection to holding the hearing in the jury's presence. The court characterized counsel's objection to the voluntariness of the statement as a "cursory" and "catchall objection," falling far short of the duty of competent representation. The court also noted that counsel's ineffectiveness was evidenced by his bolstering of the State's witnesses and his failure to sequester the three purported eyewitnesses whose testimony was not particularly reliable.

The district court concluded that counsel's ineffectiveness significantly prejudiced Lufkins' right to a fair trial. In doing so, the court emphasized the weakness of the government's case apart from Lufkins' incriminating statement. Specifically, the three purported eyewitnesses who testified

that Lufkins hit the victim were viewed as unreliable because they all had been drinking heavily prior to the lethal events of December 4.

## II.

■ The State first argues that the issue of whether Lufkins was denied due process because of the lack of a full and fair voluntariness hearing was not exhausted in the South Dakota Supreme Court. It contends that the only issue before the South Dakota Supreme Court was whether the trial court erred in holding the voluntariness hearing in the jury's presence.

The issue of whether Lufkins was denied due process because of the lack of a full and fair voluntariness hearing was squarely before the South Dakota Supreme Court. Lufkins' claim before both the state supreme court and the federal district court was that he was deprived due process by the defective procedures the trial court used to determine the voluntariness of his statement. In order to comply with the due process clause, the trial court was required to provide Lufkins with a fair voluntariness hearing, one that was "fully adequate to insure a reliable and clear-cut determination of the confession including the resolution of disputed facts upon which the voluntariness issue may depend." *Jackson v. Denno,* 378 U.S. 368, 380, 391, 84 S.Ct. 1774, 1782, 1788, 12 L.Ed.2d 908 (1967). Thus, by concluding that the trial court procedures for determining voluntariness did not violate Lufkins' due process right, the supreme court necessarily considered those procedures to have been full and fair.

Moreover, the specific findings made by the South Dakota Supreme Court indicate that it considered the fullness and fairness of the voluntariness hearing. First, the supreme court specifically found that the trial court's admission of Lufkins' statement into evidence constituted an independent determination of voluntariness. Under *Jackson v. Denno,* a necessary component of a fair and fully adequate voluntariness hearing is a distinct determination of

voluntariness. 378 U.S. at 380, 84 S.Ct. at 1782. Indeed, the district court's conclusion that the state trial court procedures were not full and fair was based in large part upon its rejection of the supreme court's finding that the trial court made a distinct determination of voluntariness. The supreme court also found, albeit erroneously, that Lufkins' statement was admitted only after Sheriff Long had been subject to extensive cross-examination by Lufkins' counsel. This erroneous finding certainly would have fostered a belief on the part of the supreme court that the hearing was fair and fully adequate to insure a reliable determination of voluntariness.

The State however urges that the South Dakota Supreme Court's opinion only addressed Lufkins' claim that the trial court erred in holding the hearing in the jury's presence. While it is true that the supreme court's opinion primarily focused upon the propriety of the trial court's holding the hearing in the jury's presence, we cannot infer from this that the supreme court failed to consider other aspects of the fairness and adequacy of the trial court's procedures. Indeed, in order to conclude that the trial court procedures complied with due process, the court must have reviewed the overall fairness and adequacy of the hearing, in addition to the propriety of the jury's presence. Therefore, we conclude that Lufkins' claim as to the unfairness and inadequacy of the voluntariness hearing, having been fairly presented to and passed upon by the South Dakota Supreme Court, is exhausted. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

### III.

We now consider the fairness and adequacy of the procedures used by the trial court to determine the voluntariness of Lufkins' incriminating statement. The State argues that the trial court's procedures were fair and fully adequate to insure a reliable and clear-cut determination of voluntariness. It alternatively suggests that any procedural errors were harmless because the testimony of Officers Long and Peterson clearly established that the statement was voluntarily given.

In *Jackson v. Denno,* the Supreme Court struck down a state procedure allowing the same jury to determine both the defendant's guilt and the voluntariness of the defendant's confession for admissibility purposes. The Court reasoned that placing the determination of voluntariness for admissibility purposes and guilt in the same hands posed a significant risk that matters pertaining to the defendant's guilt and the truthfulness or reliability of his confession would infect the findings bearing upon voluntariness. 378 U.S. at 383, 386–87, 389–90, 394, 84 S.Ct. at 1784, 1785–86, 1787–88, 1790. The *Jackson* court stated: "[I]t is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession." *Id.* at 376, 84 S.Ct. at 1780. The Court accordingly held that in order to assure compliance with the due process clause of the fourteenth amendment, the trial court procedure for determining voluntariness "must ... be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." *Id.* at 391, 84 S.Ct. at 1788.

We agree with the district court that the procedures employed by the trial judge fell short of satisfying the due process standard enunciated in *Jackson v. Denno.* First, we express grave doubts as to whether the trial court's admission of the statement into evidence met the *Jackson v. Denno* requirement of a "clear-cut determination" of the voluntariness of the statement. *See Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967) (trial court's finding of voluntariness "must appear from the record with unmistakable clarity."); *See also Parker v. Sigler,* 413 F.2d 459, 462 (8th Cir.1969) (trial court's overruling of objection to admission of confession insufficient to constitute a finding of voluntariness),

*rev'd on other grounds,* 396 U.S. 482, 483, 90 S.Ct. 667, 24 L.Ed.2d 672 (1970).

■ However, even assuming the admission of the statement did constitute a "clear-cut determination" of voluntariness, the timing of the trial court's admission of the statement rendered a fair and reliable determination of voluntariness highly improbable if not impossible. The trial court admitted the statement after Sheriff Long testified that the statement was voluntarily given, but before Lufkins had an opportunity to test the accuracy and reliability of Sheriff Long's testimony by cross-examination or by rebuttal evidence. That Lufkins vehemently disputed Sheriff Long's account was evidenced by Lufkins' pretrial list of objections and his challenges to the veracity of Sheriff Long's testimony while the Sheriff was testifying. Yet despite this factual dispute surrounding the circumstances under which Lufkins' incriminating statement was given, the trial judge admitted the statement before giving Lufkins an opportunity to challenge Sheriff Long's version. A voluntariness hearing that prevents a defendant from challenging the State's evidence as to voluntariness of his statement can be neither fair nor reliable. *See United States ex rel. Hickman v. Sielaff,* 521 F.2d 378, 386 (7th Cir.1975) (voluntariness hearing incomplete where trial judge fails to hear defendant's version).

In *United States v. Carignan,* 342 U.S. 36, 38, 72 S.Ct. 97, 98, 96 L.Ed. 48 (1951), the Supreme Court held that the trial court committed reversible error by admitting defendant's confession into evidence after the State had presented evidence of voluntariness but without giving the defendant an opportunity to present rebuttal evidence. The Court in *Carignan* reasoned that the "[defendant's] evidence would be pertinent

to the inquiry on admissibility and might be material and determinative." *Id.* We believe this reasoning is directly applicable here.

We also question the propriety of the trial court's holding the voluntariness hearing in the jury's presence. In *Pinto v. Pierce,* 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967), the Supreme Court upheld a conviction even though the trial judge held a voluntariness hearing in the presence of the jury. In doing so, the Supreme Court emphasized that the trial judge had repeatedly asked defense counsel whether there was any objection to holding the hearing in the jury's presence and counsel expressly waived any objection. *Id.* at 32–33, 88 S.Ct. at 193. The *Pinto* court held that "[s]ince trial counsel consented to the evidence on voluntariness being taken in the presence of the jury, and the judge found the statement voluntary, [defendant] was deprived of no constitutional right." *Id.* at 33, 88 S.Ct. at 193.

The reasoning underlying the *Pinto* holding seems clear enough: if defense counsel waives objection to the jury's presence, then no claim can be made that the voluntariness hearing was unfair or inadequate because the jury was present. *Id.* at 32, 88 S.Ct. at 193. By the same token, however, we believe *Pinto* at least implicitly recognizes that if there is no waiver, it may be unfair to hold the hearing in the jury's presence.[2] The Court in *Pinto,* 389 U.S. at 32 n. 2, 88 S.Ct. at 193 n. 2, specifically noted its earlier holding in *United States v. Carignan,* 342 U.S. at 38, 72 S.Ct. at 98, that a defendant who challenges the voluntariness of a confession should be given an *opportunity* to testify as to the facts surrounding his confession in the absence of the jury.[3]

**2.** Circuit courts have interpreted *Pinto* differently. Some courts read *Pinto* to require a waiver of objection to the jury's presence. *See United States ex rel. Hickman v. Sielaff,* 521 F.2d 378, 379–80 (7th Cir.1975); *Lindsey v. Craven,* 521 F.2d 1071, 1072–73 (9th Cir.1975); *Gladden v. Unsworth,* 396 F.2d 373, 375 n. 1 (9th Cir.1968); *cf. United States ex rel. Bennett v. Rundle,* 419 F.2d 599, 605 (3d Cir.1969) (un-

der *Jackson v. Denno* jury is necessarily to be excluded from voluntariness hearing.) One court seems to interpret *Pinto* as saying that regardless of waiver, the jury's presence does not violate due process when the confession is proven voluntary. *See Martinez v. Estelle,* 612 F.2d 173, 177 (5th Cir.1980).

**3.** In *Watkins v. Sowders,* 449 U.S. 341, 346, 101 S.Ct. 654, 657, 66 L.Ed.2d 549 (1980), the Su-

In the instant case, the trial court never considered the propriety of holding the hearing in the jury's presence, despite knowing of Lufkins' vehement objections to the voluntariness of the statement. Unlike *Pinto,* the trial court here never asked defense counsel if he had any objection to the jury's presence and there was no express waiver. Whether *Pinto* permits a trial court to hold a voluntariness hearing in the jury's presence when the judge knows of the defendant's vehement objections to the voluntariness of the statement is a very difficult question. Under the circumstances presented here, it certainly would have been prudent for the trial court to have asked whether Lufkins' counsel consented to the jury's presence. *Pinto,* 389 U.S. at 32, 88 S.Ct. at 193. However, even assuming trial counsel's failure to object to the jury's presence constitutes a waiver under *Pinto,* the trial court's procedures were still constitutionally defective because, as set forth above, they were incapable of insuring a fair and reliable determination of voluntariness. It should be noted that in *Pinto* the determination of voluntariness was not made until after all evidence concerning that subject was heard which included the testimony of the defendant.

We cannot agree with the State that Lufkins' opportunity to cross-examine Sheriff Long and to present rebuttal evidence after the trial court had admitted the incriminating statement satisfies the requirement of a fair and reliable determination of voluntariness. Once the trial court admitted the statement and thereby impliedly determined that it was voluntarily given, any subsequent effort to challenge the admissibility of the statement and to have it excluded from the jury's consideration would have been virtually futile. *See Hickman,* 521 F.2d at 386. Moreover, even if subsequent cross-examination and rebuttal evidence conceivably could have enabled the trial court to later make a reliable determination of voluntariness, there was no such determination here. The only gesture by

the trial court even remotely resembling a determination of voluntariness was the ruling admitting the statement into evidence, which came before Lufkins was given an opportunity to cross-examine the State's witnesses and to present his own rebuttal evidence.

Alternatively, the State contends that any procedural error here was harmless because the purported "airtight" testimony of Sheriff Long and Investigator Peterson clearly established the Lufkins' statement was voluntarily given. We disagree. The officers' testimony, no matter how seemingly airtight, could not have supported a reliable determination of voluntariness until that testimony was first tested by Lufkins' cross-examination and rebuttal evidence. Providing a defendant with a meaningful opportunity to challenge the state's testimony on voluntariness is not an extravagant, procedural formality to be cast aside when convenient; it is fundamental to a fair and reliable determination of voluntariness and hence firmly rooted in the due process clause of the fourteenth amendment.

## IV.

The State contends the district court erred in finding that Lufkins' trial counsel was incompetent. First, the State urges that under 28 U.S.C. § 2254(d) the district court was bound by the South Dakota Supreme Court's finding of counsel's competence. Furthermore, the State suggests, counsel's failure to request an independent voluntariness hearing outside of the jury's presence was a reasonable tactical choice because Lufkins' voluntariness claim was destined to fail. Finally, the State contends that Lufkins could not have been materially prejudiced by counsel's purported incompetence because of other evidence existing in the record to sustain guilt.

To prevail on his claim of ineffective assistance of counsel, a habeas petitioner must demonstrate: (1) that his attorney

---

preme Court assumed, without expressly deciding, that *Jackson v. Denno* established a *per se* due process right to a hearing outside the presence of the jury whenever a question of voluntariness of a confession is raised.

failed to exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances; and (2) that he suffered material prejudice as a result. *Morrow v. Parratt,* 574 F.2d 411, 412–13 (8th Cir.1978). A federal court reviewing a habeas petitioner's ineffective assistance claim must accord a presumption of correctness to a state court's determination of effectiveness unless one of the circumstances set forth in 28 U.S.C. § 2254(d) applies. *Sumner v. Mata,* 449 U.S. 539, 551–52, 101 S.Ct. 764, 771–72, 66 L.Ed.2d 722 (1981).

■ Considering the foregoing, we initially note that the district court acted properly in holding an evidentiary hearing on Lufkins' ineffective assistance claim because the record before the South Dakota Supreme Court was not adequately developed to support a determination of counsel's effectiveness. *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). Moreover, having carefully reviewed the district court's evidentiary hearing transcript, which includes the testimony of Lufkins and his trial counsel, and the State court record, which includes the transcript of Lufkins' trial, we hold that the district court properly concluded that Lufkins carried his burden of proving by convincing evidence that the South Dakota Supreme Court's finding of trial counsel's competence was erroneous. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. at 550, 101 S.Ct. at 770 (1981).

Lufkins' trial counsel, despite having experience in representing criminal defendants, failed to exercise the customary skill and diligence that a reasonably competent attorney would have exercised under the circumstances. Specifically, Lufkins' trial counsel failed to fulfill his duty to exercise his professional judgment on behalf of his client and his duty of adequate legal preparation. *Thomas v. Wyrick,* 535 F.2d 407, 413 n. 6 (8th Cir.1976). *See also* ABA Code of Professional Responsibility, D.R. 6–101(A)(2). Lufkins' trial counsel knew that Lufkins had given a statement directly implicating himself in a homicide. He also recognized that his client vehemently maintained that the statement was given involuntarily.[4] Counsel's trial strategy was based on the theory that someone other than Lufkins had struck the decedent, a theory that was to be undercut directly by the admission of the incriminating statement signed by Lufkins. Counsel therefore readily admitted during the evidentiary hearing before the district court that the voluntariness of his client's statement was a material issue in the case.

Under these circumstances, trial counsel had a duty to test the voluntariness of Lufkins' statement. Under the provisions set forth in *State v. Thundershield,* 160 N.W.2d at 412, counsel could have challenged the voluntariness of the statement in an independent hearing outside of the jury's presence. *Thundershield,* 160 N.W.2d at 412, provides:

> When a confession or an incriminating statement allegedly made by the accused is offered by the prosecution and objected to, the State has the burden of proving beyond a reasonable doubt the same was freely and voluntarily made. This proof must be made in an independent hearing of all relevant facts outside the presence of the jury. At this hearing the defendant may testify and be cross-examined as to the issue of voluntariness without jeopardy to or waiver of his right to remain silent at the trial.

The procedures made available to a criminal defendant in *Thundershield* implicate fundamental constitutional rights. In *Pinto v. Pierce,* 389 U.S. at 32–33, 88 S.Ct. at 193, the Supreme Court implicitly recognized that a defendant is entitled to an independent hearing outside of the presence of a jury unless he waives that right. Also, in

---

4. Although at the evidentiary hearing before the district court, defense counsel denied having ever actually seen the contents of Lufkins' handwritten list of objections filed in open court on June 12, 1980, he was certainly aware of the document's existence. Moreover, Lufkins testified that he had counsel's help in drawing up the list and that counsel delivered the list to the judge.

*United States v. Carignan,* 342 U.S. at 38, 72 S.Ct. at 98, the Supreme Court recognized that a defendant who challenges the voluntariness of a confession should be given an opportunity to testify as to the facts surrounding his confession in the absence of the jury.

We therefore conclude that reasonably competent counsel would have attempted to test the voluntariness of Lufkins' statement under the provisions of *Thundershield.* At the very least, competent counsel would have made an objection on due process grounds to having the hearing in the jury's presence. Furthermore, competent counsel would have raised an objection to the trial court's admission of the statement without first giving counsel an opportunity to cross-examine and to rebut the State's witnesses. Here, Lufkins' counsel failed: to request an independent voluntariness hearing; to inform Lufkins that he had an opportunity to challenge the voluntariness of his statement in a separate hearing during which he could testify without jeopardizing his right to remain silent; to make any objection to holding the hearing in the jury's presence; and to object to the trial court's admission of the statement without the benefit of cross-examination of the State's witnesses. Counsel also bolstered Agent Peterson's testimony as to the voluntariness of Lufkins' statement. Counsel's failures here seriously undercut Lufkins' effort to defend himself. Although counsel did make a cursory, catchall objection to the admission of the incriminating statement, this did not satisfy his duty of competent representation.

The State however urges that Lufkins' trial counsel reasonably believed that Lufkins' statement was voluntarily given and that a voluntariness challenge would have been futile. While a reasonably competent attorney is not required to pursue a procedural alternative having little or no likelihood of success, *Zaehringer v. Brewer,* 635 F.2d 734, 737 (8th Cir.1980), Lufkins' voluntariness challenge could not have been fairly regarded as having little or no likelihood of success. At the evidentiary hearing before the district court, Lufkins raised a genuine question as to the voluntariness and accuracy of his incriminating statement. Specifically, questions were raised about Lufkins' state of mind when he signed the statement. Without attempting to resolve the voluntariness question now, we conclude that, considering the heavy burden placed on the State to prove beyond a reasonable doubt that the statement was voluntarily made,[5] a reasonably competent attorney would not have considered a voluntariness challenge as futile.

Lufkins has also met his burden of proving that counsel's ineffectiveness prejudiced his defense. The trial record does not show that "[the] other evidence of guilt presented at trial ... was substantial to a degree that would negate any possibility of actual prejudice resulting from the admission of [the] inculpatory statement." *Wainwright v. Sykes,* 433 U.S. 72, 91, 97 S.Ct. 2497, 2509, 53 L.Ed.2d 594 (1977). Other than the incriminating statement, the only evidence of guilt was the testimony of three companions who purportedly witnessed Lufkins hit the decedent with an axe handle on the evening of December 4, 1979. However, as emphasized by the district court, these witnesses were not particularly reliable because they had been drinking heavily from the early hours of December 4, and they had difficulty recalling the events of that evening. Furthermore, apart from the prejudice caused by counsel's failure to challenge the admission of the incriminating statement, counsel undercut Lufkins' trial defense by failing to sequester these three eyewitnesses so that they could not listen to one another's testimony. We believe this was further evidence of counsel's prejudicial failure to exercise his professional judgment in his client's behalf.

## V.

■ The last and certainly most difficult issue we address is whether the district court erred in ruling that trial counsel's ineffectiveness entitled Lufkins to a new

---

**5.** *See Thundershield,* 160 N.W.2d at 412.

trial. The State argues that if a new voluntariness hearing determines that Lufkins' statement was voluntary and therefore properly before the jury, counsel's ineffectiveness in failing to mount a voluntariness challenge would be nonprejudicial, and would not warrant a new trial. In support of this argument, the State relies upon *Jackson v. Denno,* 378 U.S. at 394, 84 S.Ct. at 1790, where the Court states:

> If at the conclusion of such an evidentiary hearing in the State Court on the coercion issue, it is determined that [the defendant's] confession was voluntarily given, admissible in evidence, properly to be considered by the jury, we see no constitutional necessity at that point for proceeding with a new trial, for [the defendant] has already been tried by a jury with a confession placed before it and has been found guilty.

Although superficially appealing, the State's argument is defective in two significant respects. First, while the district court primarily focused upon counsel's ineffectiveness in failing to mount a voluntariness challenge, it also found that counsel's ineffectiveness was reflected by his failure to sequester the three purported eyewitnesses who were to testify, and by his apparent bolstering of a State's witness. Certainly the prejudice resulting from counsel's failure to sequester the three unreliable eyewitnesses and his bolstering of a State witness would not be cured by a subsequent determination of voluntariness in a full and fair voluntariness hearing.

Second, the remedy in *Jackson v. Denno* was not intended to cover situations where counsel prejudices his client's right to a fair trial by failing to request an independent voluntariness hearing outside of the jury's presence. In his concurrence in *Pinto,* 389 U.S. at 33–34, 88 S.Ct. at 193–94, Justice Fortas accentuated the danger of having the jury present while the trial judge hears evidence on the voluntariness of a confession and determines its admissibility. Justice Fortas stated:

> *Jackson v. Denno* means that the judge and the jury must each make an independent judgment of voluntariness of an admission, the judge for purposes of admissibility and the jury for evidentiary acceptability, credibility, and weight. A telescoped hearing before judge and jury, in which the judge finds voluntariness for purposes of admissibility, in reality reduces the jury function to an echo. Hearing the evidence simultaneously with the judge, the jury is not apt to approach disagreement with him.... [This procedure], by reducing the effectiveness of the jury, gravely impairs the constitutional principle of excluding involuntary confessions which *Jackson v. Denno* sought to serve.
>
> The jury is the traditional and preferred arbiter of facts. The procedure countenanced here, by dicta, sanctions, in effect, a direction to the jury to accept and give full credence to the admission— because the judge, hearing the same testimony, has ruled that the admission is voluntary.

*Id.* at 34, 88 S.Ct. at 194. *Accord Hickman,* 521 F.2d at 386.

Applying Justice Fortas' insights to this case, even if a full and fair voluntariness hearing determines that Lufkins' statement was properly admitted during Lufkins' trial, this would not cure the prejudice caused by the jury's presence when the trial court took testimony on the voluntariness of Lufkins' statement and ruled that the statement was voluntary for purposes of admissibility. By failing to have the jury excluded, Lufkins' counsel significantly vitiated the jury's ability to make its own independent judgment as to the voluntariness of the statement for purposes of "evidentiary acceptability, credibility, and weight."

We therefore affirm the district court's ruling the trial counsel's ineffectiveness so prejudiced Lufkins' right to a fair trial as to entitle Lufkins to a new trial.