**UNITED STATES of America, Appellee,**

v.

**Gary Lee COPLEY, Appellant.**

**No. 90–2664.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1991.

Decided July 5, 1991.

---

1. The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

Rana L. Faaborg, Springfield, Mo., for appellant.

Richard E. Monroe, Springfield, Mo., argued, for appellee. Jean Paul Bradshaw appeared on appellee's brief with Richard E. Monroe.

Before McMILLIAN and MAGILL, Circuit Judges, and WOODS,* District Judge.

MAGILL, Circuit Judge.

Gary Lee Copley appeals his conviction for possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a) and 21 U.S.C. § 841(b)(1)(C); and for using a firearm during and in relation to the drug offense, in violation of 18 U.S.C. § 924(c). Copley argues that the district court[1] erred when it admitted a hearsay statement of a co-conspirator who did not testify at trial, asserting her constitutional privilege against self-incrimination. Copley also argues that the district court improperly denied his motion for acquittal because the jury lacked sufficient evidence to convict him. Because any error caused by the admission of the hearsay statement was harmless and because there was sufficient evidence to support Copley's convictions, we affirm.

I.

On December 12, 1989, the Newton County, Missouri Sheriff's Department executed a search warrant for Copley's farmhouse, located near Neosho, Missouri. When the police arrived, they surrounded the house and announced their presence. After Copley refused to let the police into the house, the police entered a southwest bedroom of the house by shooting out the bedroom's sliding glass door. Once inside, the police restrained the occupants, read Copley a copy of the search warrant, in accordance with state law, and advised him of his *Miranda* rights. Copley admitted that he owned and lived in the house, but he claimed that he was renting the house to a person named "Terry." Copley could not remember Terry's last name. Copley claimed that he was in the process of moving to a residence in Joplin, Missouri.

---

* THE HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri.

The police discovered a green canvas bag in the southwest bedroom of the house. Copley later admitted that the contents of the bag belonged to him. Inside this bag were two black bags, one of which resembled a shaving kit; $5,900 in cash; and a plastic container that contained two sealed packets of amphetamine and Xanax, a prescription drug. In the shaving kit bag the police found Copley's checkbook, his driver's license and miscellaneous papers. The other black bag contained a semi-automatic .22 caliber pistol with one live round in the barrel, a full magazine and extra ammunition; three holsters; and a .32 caliber pistol with a box of ammunition.

The police also seized from the southwest bedroom a briefcase, which contained Copley's address book, and a spiral notebook; nineteen sealed plastic packets that contained either methamphetamine or amphetamine; a single sealed plastic packet of pink methamphetamine; and a plastic container containing two marijuana cigarettes and a small vial with methamphetamine residue. The twenty sealed packets were found on top of a milk crate and the plastic container was found on the floor near one of the mattresses. In a closet adjacent to the southwest bedroom the police discovered a rifle. All of the occupants of the house were subsequently arrested. The police also arrested Donald Joe Gannaway, who arrived at Copley's farmhouse during the execution of the search.

On January 4, 1990, Special Agent Larry Nolan interviewed Glennis Thomas in conjunction with the investigation into the arrests made at Copley's home on December 12, 1989. At that time, Thomas was in custody on charges which included possession with intent to distribute methamphetamine. During this interview, Thomas admitted that she purchased methamphetamine from Copley and that she had seen him in possession of a .22 caliber automatic pistol and a rifle. Thomas admitted that she owned some of the drugs that were seized at Copley's residence on December 12. Specifically, she claimed ownership of the pink methamphetamine. She told Special Agent Nolan that she had left an "eight ball" of pink methamphetamine[2] with Copley on December 12, which Copley was to give to Gannaway, one of Thomas' customers.

A federal grand jury indicted Copley, charging him with possession with intent to distribute methamphetamine and using a firearm during the commission of a drug trafficking offense. At Copley's trial, the government's evidence included the items seized from Copley's house on December 12; and the testimony of police officers involved in the investigation, an expert witness in forensic chemistry, and several people who had purchased drugs from Copley. Susan Tipton, one of Copley's customers, testified that she had bought methamphetamine from Copley in the spring and summer of 1989 and had last bought drugs from Copley in late October. Another government witness, Pamela Jo Chumley, testified that she had purchased both white and pink methamphetamine from Copley and Thomas, who was dating Copley's tenant, Terry.

The government did not call Thomas as a witness because she exercised her fifth amendment right not to incriminate herself. Consequently, the government called Special Agent Nolan to testify to the substance of his interview with Thomas. Copley objected to the admission of this testimony, claiming that it was hearsay. The district court overruled his objection. At the end of the government's case, Copley moved for a judgment of acquittal. The district court denied this motion.

In his defense, Copley claimed that he stopped selling drugs in late October 1989 and that the drugs seized from his home belonged to Thomas. Copley testified that he rented his farmhouse to Thomas' boyfriend, Terry, and that he wanted to evict Terry because of the drug dealing. Copley also testified that the cash found in the green bag was a loan from his mother and

**2.** An "eight ball" of pink methamphetamine refers to a one-eighth ounce quantity of methamphetamine that has a pinkish hue.

was going to be used to purchase a boat. The jury convicted Copley on both charges and the district court sentenced him to a total of 111 months' imprisonment.

## II.

Copley raises two issues on appeal. First, he argues that the district court improperly admitted Special Agent Nolan's hearsay testimony, thereby violating his sixth amendment confrontation right. Second, he claims that, as a matter of law, there was insufficient evidence to support a guilty verdict. The government argues that Thomas' statements were properly admitted through Special Agent Nolan because the statements were against her penal interest. The government also argues that the admission of Special Agent Nolan's testimony did not violate the confrontation clause because the declarant was not available and the statements had the requisite indicia of reliability. Furthermore, the government argues, even if the district court erred in admitting the testimony, the great weight of evidence supporting the conviction rendered the error harmless. Finally, the government argues that, viewing all the evidence in the light most favorable to the government and granting the government all reasonable inferences, there was sufficient evidence to support the jury's verdict.

■ Hearsay rule violations which do not affect constitutional rights are subject to Fed.R.Crim.P. 52(a) harmless error analysis, *United States v. Drummond*, 903 F.2d 1171, 1174 (8th Cir.1990), while confrontation right violations are subject to the stricter harmless error test found in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which requires that the error be harmless beyond a reasonable doubt, *id.* at 24, 87 S.Ct. at 828. Since Copley claims that the district court violated one of his constitutional rights, we must apply the stricter harmless error test found in *Chapman*. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). If the alleged error which gave rise to Copley's constitutional claim was harmless beyond a reason-

able doubt, we must affirm his conviction and we need not determine whether the district court erred in admitting Special Agent Nolan's testimony. *See Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438.

■ In *Van Arsdall*, the Supreme Court listed several factors that appellate courts could weigh to determine whether a confrontation clause error was harmless beyond a reasonable doubt. These factors include: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of the cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438 (citations omitted). While the Court in *Van Arsdall* dealt with a confrontation clause violation arising from court-imposed restrictions on cross-examination, its reasoning applies to Copley's confrontation clause claim because the same fundamental right was implicated in both situations.

Appellate courts have repeatedly held that violations of the confrontation clause caused by improper admission of hearsay statements are harmless beyond a reasonable doubt when there is overwhelming evidence of defendant's guilt. *See U.S. v. Cross*, 928 F.2d 1030, 1052 (11th Cir.1991); *United States v. Christopher*, 923 F.2d 1545 (11th Cir.1991); *United States v. Payne*, 923 F.2d 595 (8th Cir.1991); *United States v. Ruff*, 717 F.2d 855, 858 (3d Cir.1983); *cf. Holland v. Attorney General*, 777 F.2d 150, 158–59 (3d Cir.1985) (no harmless error when admission of testimony about codefendant's extrajudicial statements implicating defendant not cumulative, and evidence of guilt sufficient to support conviction but not overwhelming); *United States v. Riley*, 657 F.2d 1377 (8th Cir.1981) (admission of inculpatory hearsay statement not harmless when statement boosted credibility of prosecution witness).

Copley argues that the district court's allegedly improper admission of Thomas' inculpatory statements cannot be con-

sidered harmless error because these statements were the only evidence that provided any evidence that he possessed with the intent to distribute methamphetamine. We disagree. The government's case against Copley did not rest on Thomas' inculpatory statements. Rather, the government had overwhelming evidence of Copley's guilt. First, the drugs were found in plain view in Copley's bedroom. Second, the drugs were packaged for distribution, in sealed plastic bags. Third, the police also found Copley's loaded automatic pistol in Copley's bedroom. Fourth, the police found a large amount of currency in a bag containing Copley's possessions. Fifth, the bag that contained Copley's possessions also contained a vial with methamphetamine residue. Finally, several of Copley's "clients" admitted to purchasing methamphetamine from Copley approximately six weeks before his arrest. After reviewing the entire record, it is clear that Special Agent Nolan's testimony concerning Thomas' statements did not constitute a major part of the overwhelming evidence of guilt presented by the prosecutor.

Furthermore, Copley was afforded an opportunity to cross-examine fully Special Agent Nolan and, even though Copley could not cross-examine Thomas, he was able to impeach her credibility by informing the jury that she was also being prosecuted for drug offenses.

The government's case against Copley was very strong. He was found in his bedroom, with a substantial quantity of drugs already packaged for distribution, a loaded automatic pistol, and large amounts of currency. Given the strength of the prosecution's case, the relatively minor role of the allegedly improper hearsay testimony in the prosecution's case, and Copley's opportunity to impeach the credibility of the out-of-court declarant, we hold that any error caused by the admission of Special Agent Nolan's testimony was harmless beyond a reasonable doubt.

Copley's second argument, that the jury had insufficient evidence to support its verdict, is without merit. In addressing sufficiency claims, we must view all the evidence in the light most favorable to the government, granting the government all reasonable inferences in its favor, and we must affirm if a reasonable jury could have found the defendant guilty. *United States v. Meirovitz*, 918 F.2d 1376, 1380 (8th Cir. 1990) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)). Given our review of the evidence, we conclude that the jury had more than sufficient evidence to return a guilty verdict on both charges.

### III.

For the foregoing reasons, we affirm Copley's conviction.