Dennis LUFKINS, Appellee,

v.

Walter LEAPLEY, Warden of the South Dakota State Penitentiary; Mark Barnett, Attorney General for the State of South Dakota, Appellants.

No. 91–1697.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1991.

Decided May 7, 1992.

Rehearing and Rehearing En Banc Denied June 24, 1992.

---

Craig M. Eichstadt, Deputy Atty. Gen. (argued), Pierre, S.D., for appellants.

Robert C. Riter, Jr. (argued), Pierre, S.D., for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

The State of South Dakota appeals the district court's grant of habeas corpus relief to Dennis Lufkins. The district court found that Lufkins' 1980 trial counsel was ineffective in the cross-examination of three witnesses and, therefore, the admission of their statements against Lufkins in a later trial violated his Sixth Amendment right to confront witnesses. We agree that ineffective cross-examination may under certain circumstances preclude the admis-

sion of testimony in a subsequent proceeding. But since we find that the admission of the three statements in this case was harmless beyond a reasonable doubt, we reverse the granting of habeas relief.

### I.

Petitioner Dennis Lufkins was at the home of Ernest Hayes in Sisseton, South Dakota, on December 4, 1979, along with Hayes, Eugene Hedine, Matthew Blue Dog, and Ruth Titus. Sylvester Johnson arrived at the home with some wine at about 10:30 a.m. The group drank the wine and later that afternoon consumed a bottle of rubbing alcohol. At about 9:30 to 10:00 p.m., Lufkins and Johnson began to fight. Lufkins grabbed an axe by the blade and swung the handle, striking Johnson on the right side of the head.

Johnson fell to the floor, but regained his feet with the help of Hayes and Hedine. After Johnson fell again, Hayes helped him outside to a car and began driving him to a hospital. Johnson had been alert for a short period after the blow, but passed out in the car. When Johnson's skin began to darken, Hayes believed he had died. Hayes stopped the car, dragged Johnson's body to a church lawn, left it there, and returned to his home. Johnson's lifeless body was found the next morning.

An autopsy revealed that Johnson had died as the result of a single blow to the head by a blunt instrument. After receiving the autopsy, the Roberts County Sheriff's Office began an investigation. An informant indirectly implicated Lufkins. Roberts County Sheriff Neil Long and Division of Criminal Investigation Agent Delbert Peterson interviewed Lufkins about the death. After being informed of his rights, Lufkins admitted striking Johnson on the right side of the head with an axe handle. Lufkins later signed a statement making the same admission.

Lufkins' initial trial began on June 2, 1980, but was aborted when he pleaded guilty to first-degree manslaughter. Lufkins was allowed to withdraw his plea on June 12, 1980, and was subsequently convicted of first-degree manslaughter in a second trial later that month. At this second trial, Ernest Hayes, Matthew Blue Dog, and Eugene Hedine testified as to a similar course of events leading up to the fateful altercation between Johnson and Lufkins. The three men also testified that they witnessed Lufkins strike Johnson on the right side of the head with an axe handle. Lufkins subsequently pleaded guilty to being a habitual criminal and was sentenced to life imprisonment. The conviction and sentence were affirmed by the South Dakota Supreme Court. *State v. Lufkins*, 309 N.W.2d 331 (S.D.1981).

Lufkins then filed his first habeas petition in federal district court, arguing that the state trial court violated his due process rights by failing to hold a hearing on the voluntariness of his confession outside the presence of the jury. Lufkins also claimed his trial counsel was ineffective for failing to object to the lack of a hearing. The district court granted habeas relief, holding that Lufkins' trial counsel provided ineffective representation by failing to object to the state court's constitutionally deficient hearing on the voluntariness of Lufkins' confession. *Lufkins v. Solem*, 554 F.Supp. 988, 994 (D.S.D.1983). This court affirmed, agreeing with the trial court that Lufkins' trial counsel provided ineffective representation by failing to object to the lack of a voluntariness hearing, by failing to make a motion to sequester witnesses during the trial, and by bolstering the testimony of a prosecution witness. *Lufkins v. Solem*, 716 F.2d 532, 541–42 (8th Cir.1983), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

The state retried Lufkins. Prior to this third trial, the state court held a hearing on numerous motions. The trial court concluded, *inter alia*, that Lufkins' statement to police was voluntary and, therefore, admissible. The trial court also ruled that Hayes, Blue Dog, and Hedine were not available to testify at the third trial despite the good-faith efforts of the state to secure their presence. The court thus ruled that the prior testimony of Hayes, Blue Dog, and Hedine from the 1980 trial could be read into the record in the third trial.

The third trial began on October 31, 1984. Lufkins' admission and the transcript testimony of Hayes, Blue Dog, and Hedine was read into evidence. On November 5, 1984, the jury convicted Lufkins of first-degree manslaughter. Lufkins later pleaded guilty to being a habitual offender and was sentenced to life imprisonment. The South Dakota Supreme Court affirmed the conviction and sentence. *State v. Lufkins*, 381 N.W.2d 263 (S.D. 1986).

Lufkins filed this second habeas petition on May 14, 1987, alleging his conviction was based on a violation of his Sixth Amendment right to confront and cross-examine witnesses.[1] The district court granted habeas relief, ruling that defense counsel in Lufkins' 1980 conviction was ineffective in cross-examining Hayes, Blue Dog, and Hedine. Since competent trial counsel would have better attacked the credibility of the three witnesses, the district court concluded that the testimony bore insufficient indicia of reliability to be admitted as evidence during the third trial. *Lufkins v. Solem*, No. 87–1016, mem. (D.S.D. Feb. 14, 1991).

## II.

■ It has long been clear that constitutional violations can be subject to harmless error analysis. *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Indeed, this is true of most constitutional violations. *Arizona v. Fulminante*, — U.S. —, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302 (1991). The factor determining when a constitutional violation is subject to harmless error analysis is whether the violation constituted trial error or whether it constituted a structural defect in the case itself. *Id.* 111 S.Ct. at 1264–65. This distinction is important because errors occurring during the course of the trial may be assessed quantitatively along with the other evidence presented at trial. It is possible, therefore, to determine if trial errors were harmless beyond a reasonable doubt. *Id.* 111 S.Ct. at 1264. On

the other hand, structural defects, such as the total deprivation of right to counsel, can never be subject to harmless error analysis because they call into question the legitimacy of the entire proceeding. *Id.* at 1265.

■ Violations of the right to confront witnesses under the Sixth Amendment are subject to harmless error analysis. In *Bruton v. United States*, 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968), the Supreme Court held that the admission of the confession of a codefendant who did not take the stand at a joint trial violated a defendant's right to cross-examine witnesses when that confession implicated the defendant. It has been repeatedly held that *Bruton* errors may be harmless. *Harrington v. California*, 395 U.S. 250, 253, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *Schneble v. Florida*, 405 U.S. 427, 428, 92 S.Ct. 1056, 1057, 31 L.Ed.2d 340 (1972); *Brown v. United States*, 411 U.S. 223, 231, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1973).

The mere finding of a violation of the *Bruton* rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.

*Schneble v. Florida*, 405 U.S. at 430, 92 S.Ct. at 1059.

■ Not only may the complete denial of the right to cross-examine witnesses be harmless, a court's restrictions on a defendant's cross-examination of witnesses may constitute harmless error beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986) (constitutionally improper denial of defendant's opportunity to impeach a witness for bias held to be subject to harmless error analysis). Therefore, in cases where a defendant is given a full

---

1. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

opportunity to cross-examine witnesses but is disappointed with the results, the ineffectiveness of that cross-examination—even if it were found to constitute constitutional error—may be harmless beyond a reasonable doubt.

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438.

Therefore, to determine whether the introduction of the statements of Hayes, Blue Dog, and Hedine was harmless beyond a reasonable doubt, we must examine the other evidence introduced at the trial to determine whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Yates v. Evatt*, —— U.S. ——, 111 S.Ct. 1884, 1892, 114 L.Ed.2d 432 (1991) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)).

■ The government failed to argue harmless error in its appellate brief. While the government may waive harmless error, an appellate court has discretion to overlook the waiver under certain circumstances. *United States v. Giovannetti*, 928 F.2d 225, 226–27 (7th Cir.1991). The factors considered by the *Giovannetti* court in determining whether an appellate court should undertake a harmless error analysis in situations where the government fails to raise it are: (1) the length and complexity of the record, (2) the certainty

of the harmlessness finding, and (3) whether a reversal will result in protracted, costly and futile proceedings in district court. *Id.* at 227. In *United States v. Pryce*, 938 F.2d 1343, 1348 (D.C.Cir.1991), a divided panel concluded that an appellate court may undertake an unbriefed harmless error analysis when the "relevant portions of the record are reasonably short and straightforward." The panel's opinion, however, cautioned that when an appellate court conducts a review of the record on its own initiative, it should err on the side of the criminal defendant. *Id.* at 1348. *See also United States v. Rodriguez Cortes*, 949 F.2d 532, 543 (1st Cir.1991) (raising harmless error analysis sua sponte where harmfulness of error was obvious); *United States v. Jewel*, 947 F.2d 224, 228–29 n. 5 (7th Cir.1991) (court addresses unbriefed harmless error claim based on the "certainty of harmlessness"); *United States v. Benson*, 941 F.2d 598, 605 (7th Cir.1991); *cf. United States v. Vontsteen*, 950 F.2d 1086, 1091–92 (5th Cir.1992) (appellate courts ordinarily have the discretion to address legal questions that are not timely raised).

Our sua sponte analysis also comports with Supreme Court precedent. In *United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), the Court determined that tainted evidence was used in a search warrant affidavit. The Court, on its own initiative and without briefing by the parties, however, conducted a review of the record and determined that sufficient evidence existed beyond the tainted evidence to support the search warrant. *Id.* at 719–21, 104 S.Ct. at 3305–06. In *Yates*, 111 S.Ct. 1884, the Court remanded a habeas petitioner's claim to the South Carolina Supreme Court to conduct a harmless error analysis. When the case returned to the Court on appeal, the Court concluded that the state court had applied the wrong legal standard in its analysis. Nevertheless, the Court conducted an independent review of the record to make a harmlessness determination. "[W]e have the authority to make our own assessment of the harmlessness of a constitutional error in the first instance." *Id.* at 1894–95.

We undertake harmless error analysis sua sponte in this case because we find that reviewing the rather straightforward record will prevent an expensive and futile remand. Moreover, contrary to the dissent's argument, we think it clear that the finding of harmlessness is beyond reasonable argument. While this case has a convoluted procedural history, the relevant record consists only of the transcript of the third trial. This transcript includes Lufkins' confession to the crime as well as corroborating evidence.

The primary evidence, of course, is Lufkins' detailed confession. The "indelible impact" that a full confession may have on a trier of fact cannot be understated. *Arizona v. Fulminante*, — U.S. —, 111 S.Ct. 1246, 1266, 113 L.Ed.2d 302 (1991) (Kennedy, J., concurring).

Nevertheless, an uncorroborated confession, standing alone, cannot provide the grounds to convict a defendant. *Smith v. United States*, 348 U.S. 147, 152, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954). But in cases where the existence of the crime has been established, the guilt of the accused may stand on nothing more than the defendant's otherwise uncorroborated confession. *Id.* The state must be able to prove in a crime involving damage to persons or property that the injury for which the accused confessed did occur, and that some person was criminally responsible for it. These two factors comprise the so-called corpus delicti. *Wong Sun v. United States*, 371 U.S. 471, 489 n. 15, 83 S.Ct. 407, 418 n. 15, 9 L.Ed.2d 441 (1963). "A notable example is the principle that an admission of homicide must be corroborated by tangible evidence of the death of the supposed victim." *Id.* (citing 7 Wigmore, Evidence § 2072, n. 5 (3d ed. 1940)). "There need in such a case be no link, outside the confession, between the injury and the accused who admits having inflicted it." *Wong Sun*, 371 U.S. at 489–90 n. 15, 83 S.Ct. at 418–19 n. 15.

The Eighth Circuit consistently has followed the *Wong Sun* rule that corroborative evidence of the accused's identity need not be shown in cases where the state has established injury to person or property caused by the criminal acts of some person. *United States v. Opdahl*, 610 F.2d 490, 493 (8th Cir.1979), *cert. denied*, 444 U.S. 1091, 100 S.Ct. 1056, 62 L.Ed.2d 780 (1980). The South Dakota Supreme Court has also adopted this position. South Dakota defines the corpus delicti as (1) the fact of an injury or loss, and (2) the fact of someone's criminal responsibility for the injury or loss. *State v. Lowther*, 434 N.W.2d 747, 754 (S.D.1989); *State v. Best*, 232 N.W.2d 447, 452 (S.D.1975); *State v. Bates*, 76 S.D. 23, 71 N.W.2d 641, 644 (1955).

The evidence establishing the corpus delicti—independent of the accused's extrajudicial admission—need not be conclusive. *Id.* The evidence of the corpus delicti satisfies the corroboration rule if it is sufficient to show a "reasonable probability" that the criminal act of another caused the death of the victim. *State v. Best*, 232 N.W.2d at 453, (quoting *People v. Cantrell*, 8 Cal.3d 672, 105 Cal.Rptr. 792, 504 P.2d 1256 (1973), *overruled on other grounds by People v. Wetmore*, 22 Cal.3d 318, 149 Cal.Rptr. 265, 583 P.2d 1308 (1978)).

## III.

We now turn to our review of the evidence. A detailed confession is the most probative of all evidence. In fact, the varied opinions by Supreme Court justices in *Arizona v. Fulminante*, — U.S. —, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), all underscored one critical fact—a full confession by a defendant has an extraordinary impact on a finder of fact. Justice Kennedy wrote in concurrence that when a defendant admits a crime, the jury will be tempted to rest its decision on that evidence alone. "Apart, perhaps, from a videotape of the crime, one would have difficulty finding evidence more damaging to a criminal defendant's plea of innocence." *Id.* 111 S.Ct. at 1266–67. Justice White wrote in a portion of the Court's opinion:

A confession is like no other evidence. Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted

against him. . . . [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury.'

*Id.* at 1257 (quoting *Bruton v. United States*, 391 U.S. 123, 139–40, 88 S.Ct. 1620, 1629–30, 20 L.Ed.2d 476 (1968) (White, J., dissenting)). Finally, Justice Rehnquist, in a different portion of the Court's opinion, said that the admission of a confession "may be devastating to a defendant." *Arizona v. Fulminante*, 111 S.Ct. at 1266.

We agree that a detailed, uncoerced admission by a defendant will tell a jury more about a particular crime than any other evidence, and that a jury will give this evidence extraordinary weight. Accordingly, we give great weight to the fact that Lufkins made an uncoerced[2] confession to police detailing his involvement in the killing of Johnson.

In his statement, Lufkins told police:

The night of December 4, 1979 Eugene Hedine, Sylvester Johnson, Ernest Hayes, Mathew Blue Dog, (sic) and myself were drinking at our house. About 9:30 o'clock that evening Sylvester Johnson and myself got into an argument over drinking. I picked an axe (sic), that was standing in the corner of the living room, by the blade and hit Sylvester Johnson over the head, on the right side, with the handle of the axe. Shortly thereafter Sylvester Johnson and Ernest Hayes left the house. About 9:30 a.m. December 5, 1979 Luverne Black Thunder came to the house and told me that Sylvester Johnson had been found dead.

J.A. at 57.

■ While this confession provides compelling evidence of guilt, the state must still prove that Johnson died as the result of the criminal act of another person. There is no dispute that Johnson is dead. Our task, therefore, is to determine whether the state introduced sufficient evidence to show within a reasonable probability that Johnson's life was criminally taken by another. We have no trouble finding that the state met this burden. Dr. Thomas Henry, a forensic pathologist, performed an autopsy on Johnson. Henry testified that Johnson died of a subdural hematoma—a blood clot over the surface of the brain—caused by a blunt blow to the right side of the head. He testified the trauma was caused by a single blow and was consistent with being struck by a blunt instrument, such as an axe handle. He testified death could not have come from natural causes and the trauma was not consistent with an injury sustained by accident, such as by falling down.

Lufkins' admission fully comports with the independent evidence as to the cause of death of Johnson. Viewing this conclusion in light of the factors listed in *Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438, we find that the jury would have convicted Lufkins without regard to the testimony of Hayes, Blue Dog, and Hedine. The testimony of these three men was an insignificant part of the prosecution's case. At most, the testimony merely corroborated Lufkins' own confession. Any information given to the jury by the statements of Hayes, Blue Dog, and Hedine was simply cumulative. Moreover, the only evidence presented to contradict Lufkins' confession was testimony by Lufkins' sister, Faith Lufkins, that Dennis Lufkins was at her home the entire day and night of December 4, and by Caroline Blackthunder, another relative, that Dennis Lufkins was

---

**2.** Following the reversal of Lufkins' first conviction on his initial habeas petition, *Lufkins v. Solem*, 554 F.Supp. 988 (D.S.D.), *aff'd*, 716 F.2d 532 (8th Cir.1983), the state trial court held an evidentiary hearing outside the presence of the jury to determine the voluntariness of Lufkins' statement. The court found that Lufkins understood the *Miranda* warning and the nature of his Fifth Amendment rights; that he knowingly, intelligently, and voluntarily waived his right to remain silent and to have an attorney present; and that Lufkins' statement was voluntary and made under his own free will. *South Dakota v. Lufkins*, No. 84–316, Order at 1–2 (S.D.Cir.Ct. Oct. 29, 1984). These findings were based not only on the testimony of witnesses, but on Lufkins' own signature on a "Statement of Rights," an "Acknowledgment and Waiver of Rights," and his "Voluntary Statement." *Id.* at 3–8. These findings have not been challenged by Lufkins and are not at issue here.

at Faith Lufkins' house nearly the entire day of December 4. It seems clear that the overall strength of the state's case was only marginally bolstered, if at all, by the testimony of the three men.

Our decision comports with prior cases which have sustained convictions on similar facts. In *United States v. Todd*, 657 F.2d 212 (8th Cir.1981), *cert. denied*, 455 U.S. 926, 102 S.Ct. 1288, 71 L.Ed.2d 469 (1982), this court affirmed a murder conviction where the defendant admitted that a coconspirator struck the victim on the back of the head with a tire iron during a robbery and that the men dumped the body in a wooded area. The only evidence corroborating the defendant's statement was an autopsy that revealed that the victim died of head injuries consistent with a blow described by the defendant and testimony that the remains of the body were found in the spot identified in the defendant's admission. *Id.* at 217; *see also United States v. Voice*, 627 F.2d 138, 146 (8th Cir.1980) (confession by defendant that he had "split [the victim's] head open with a baseball bat," that "there must have been a gallon of blood on the couch," and that defendant "threw the bat behind the couch" was corroborated adequately by evidence that the victim was killed by a baseball bat, a copious amount of blood was found on the couch, and that the bat was found nearby on a footstool); *United States v. Opdahl*, 610 F.2d 490, 494 (8th Cir.1979) (upholding robbery conviction where admission by the accused that he was involved in the holdup was corroborated by independent evidence that the crime occurred).

### IV.

Since we find that the "minds of an average jury" would not have found the state's evidence significantly less persuasive had it not heard the statements of Hayes, Blue Dog, and Hedine, the admission of these statements into evidence was at most harmless error. *See Schneble v. Florida*, 405 U.S. at 432, 92 S.Ct. at 1059. There-

fore, the conviction of Dennis Lufkins must stand. The granting of habeas relief is reversed.

HEANEY, Senior Circuit Judge, dissenting.

I have no alternative but to dissent. The majority reverses on a ground (harmless error) the State has *never* raised in this court or in any court below. This is completely contrary to settled appellate procedure. Even if the question of harmless error were properly before us, I would still affirm the district court's decision to grant the writ because the confrontation clause violation was not harmless error.

### I.

The State has had ample opportunity to raise the claim that any confrontation clause violation was harmless error.[1] Although Lufkins has presented his confrontation clause claim to the South Dakota Supreme Court, the federal district court, and our court, the State has chosen not to raise the issue of harmless error before any of these courts. The majority's decision to reverse the district court on an issue not presented below or on appeal is contrary to well established precedents governing appellate procedure.

#### A. *Harmless error not raised below*

The general rule is that federal appellate courts do not consider issues not passed upon below. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Jenkins v. Missouri*, 962 F.2d 762, 766 (8th Cir.1992) (issue was not raised below, "and we do not consider such issues"); *United States v. Garrett*, 961 F.2d 743, 748 (8th Cir.1992) (double jeopardy claim not raised below "is not properly before us"). The purpose of the rule is to avoid injustice and surprise by giving the parties an opportunity to be heard on the issues they believe relevant, *Singleton*, 428 U.S. at 120–21, 96 S.Ct. at 2877–78, and we have vigorously applied the rule in habeas

---

**1.** Like the majority, I assume for purposes of this opinion that Lufkins' right to confrontation

was violated during his 1984 trial.

cases. Our court has frequently insisted that habeas petitioners raise claims in district court or find themselves barred from raising the issue on appeal. *See, e.g., Warden v. Wyrick,* 770 F.2d 112, 114 (8th Cir.), *cert. denied,* 474 U.S. 1035, 106 S.Ct. 600, 88 L.Ed.2d 579 (1985) (this court precluded from reviewing issue not raised by petitioner in district court); *Davis v. Wyrick,* 766 F.2d 1197, 1204 (8th Cir.1985), *cert. denied,* 475 U.S. 1020, 106 S.Ct. 1209, 89 L.Ed.2d 322 (1986) (same).

Oddly enough, the majority now decides to ignore this well established rule even though fairness would require us to apply it to both habeas petitioners *and* habeas respondents. Perhaps Judge Silberman of the District of Columbia Circuit has suggested the reason the majority today has eschewed an even-handed approach to the question of waiver:

> Should we be willing to overlook counsel's failure to raise a clearly winning argument—even in civil cases—if by doing so we can save the expense of a new trial (or other societal costs)? Or is this a rule for criminal cases only? And if it is the latter, is that because the courts have some unstated responsibility to help the government in its prosecution of defendants? I think not—we have only the duty to apply the law neutrally in both civil and criminal cases.

*United States v. Pryce,* 938 F.2d 1343, 1355 (D.C.Cir.1991) (Silberman, J., dissenting). Like Judge Silberman, I do not believe we have the responsibility to help prosecute criminal defendants. And like Judge Silberman and Chief Judge Ervin of the Fourth Circuit, I believe that our treatment of waiver must be even-handed and "run a two-way street:"

> [F]inality, and its companion, waiver, must run a two-way street. Finality certainly means that a petitioner cannot raise new claims on appeal not yet raised. It also must mean that the state cannot raise new defenses on appeal not raised below.

*Williams v. Dixon,* 961 F.2d 448, 458–59 (4th Cir.1992). I will be interested to see if

after this decision any members of this court will be willing to reverse a district court's *denial* of the writ by relying on an issue not presented below or on appeal by a habeas *petitioner,* or whether our court will require only the petitioners and not the states to cut straight corners.

Although there are circumstances in which we may resolve an issue not passed upon below, such as where "the proper resolution is beyond any doubt ... or where injustice might otherwise result," *see id.* 428 U.S. at 121, 96 S.Ct. at 2877, those narrow circumstances are not present here. As I demonstrate below in section II of this dissent, the resolution of the harmless error issue is not beyond doubt. Moreover, no injustice would result from declining to hear this issue because the State will still have an opportunity to retry Lufkins with constitutionally admissible evidence.

**B.  *Harmless error not raised on appeal***

The State not only failed to claim harmless error below, but it never raised the issue on appeal. An appellate court will ordinarily give no consideration to questions not raised, briefed, or argued on appeal. *Jasperson v. Purolator Courier Corp.,* 765 F.2d 736, 740–41 (8th Cir.1985). We consistently follow this rule. *See, e.g., Rang v. Hartford Variable Annuity Life Ins. Co.,* 908 F.2d 380, 383 (8th Cir.1990); *Jacobsen v. Harris,* 869 F.2d 1172, 1173–74 (8th Cir.1989) (court refused to consider arguments not raised below or not raised in appellate brief). Moreover, the State did not even raise the harmless error issue at oral argument; it simply responded to a panel member's question about the issue. In any case, we ordinarily do not consider points raised only at oral argument. *Westcott v. City of Omaha,* 901 F.2d 1486 (8th Cir.1990) (refusing to consider point urged at oral argument but not in briefs). As the Supreme Court put it, "[w]e do not reach for constitutional questions not raised by the parties. The fact that the issue was mentioned in argument does not bring the question properly before us." *Hankerson v. North Carolina,* 432 U.S. 233, 240 n. 6,

97 S.Ct. 2339, 2344 n. 6, 53 L.Ed.2d 306 (1977) (quoting *Mazer v. Stein,* 347 U.S. 201, 206 n. 5, 74 S.Ct. 460, 464 n. 5, 98 L.Ed. 630 (1954)).

Many of our cases state that we may *affirm* a district court on any ground supported by the record even if not relied upon below. *See, e.g., Lane v. Peterson,* 899 F.2d 737, 742 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990). These cases are entirely consistent with fair appellate procedure. It is the appellant who bears the burden of demonstrating the error in the lower court, and in most cases the appellee will urge an alternative ground such as harmless error to justify affirmance. It is another matter to *reverse* the district court on grounds not urged below and not urged on appeal, and the majority cites to no cases supporting such a position.

Instead, the majority, faced with contrary authority in our circuit, canvasses other circuits to find support for its decision to reverse the district court. These cases, however, provide no support. Most of the eight cases cited involve direct appeals, not habeas. None of them involve the situation here: *reversing* a district court's grant of habeas relief on an issue not raised below or on appeal. In fact, the majority fails to mention that in several of the cases it cites that the appellate court *refused* to excuse the government's failure to raise harmless error on direct appeal. *United States v. Rodriguez Cortes,* 949 F.2d 532, 542 (1st Cir.1991); *United States v. Benson,* 941 F.2d 598, 605 (7th Cir.1991); *United States v. Giovannetti,* 928 F.2d 225, 227 (7th Cir.1991). In yet another direct appeal case cited by the majority, the government at least raised the waiver issue at oral argument, and the parties then briefed the issue. *United States v. Vonts-*

*teen,* 950 F.2d 1086, 1091–92 (5th Cir.1992). That certainly did not happen in the case before us. In two other direct appeal cases, the appellate court simply *affirmed* the district court by holding any error that occurred was harmless. *United States v. Jewel,* 947 F.2d 224, 228–29 n. 5 (7th Cir. 1991); *United States v. Pryce,* 938 F.2d 1343, 1348 (D.C.Cir.1991). Although Judge Silberman's dissent in *Pryce* demonstrates why *sua sponte* consideration of harmless error is undesirable, the panel in that case (and in *Jewel*) at least followed the general rule permitting an appellate court to *affirm* a district court on any ground supported by the record even if not relied upon below.

The two Supreme Court cases cited by the majority also offer little support for its decision to reverse the district court's grant of habeas. The Supreme Court has repeatedly stated that it will not grant certiorari when "the question presented was not pressed or passed upon below." *See United States v. Williams,* —— U.S. ——, —— – ——, 112 S.Ct. 1735, 1738–1739, 118 L.Ed.2d 352 (1992), and cases cited therein. Moreover, in *Karo,* a direct appeal case, the government raised the sufficiency of the search warrant in the court below, something the State failed to do here. *See United States v. Karo,* 710 F.2d 1433, 1440–41 (10th Cir.1983). Finally, the only habeas case cited by the majority, *Yates v. Evatt,* presents a situation the exact *opposite* of the present case. In *Yates,* the harmless error issue had not only been considered by the lower court, but harmless error was the main issue before the Supreme Court. Here, of course, the harmless issue error was not raised below and it was not raised on appeal.

Under these circumstances we must affirm the district court.[2] As the First Circuit noted in *Rodriguez Cortes,* "the government's failure to brief and argue

2. Because the State did not raise the issue of harmless error, I would not remand this case to the District Court or the South Dakota Supreme Court to determine whether the confrontation clause violation was harmless error. *Compare Delaware v. Van Arsdall,* 475 U.S. 673, 677, 684,

106 S.Ct. 1431, 1434, 1438, 89 L.Ed.2d 674 (1986) (case remanded to Delaware Supreme Court where State had raised harmless error issue in that court and in the United States Supreme Court).

harmless error is itself an indication it recognized how harmful the [erroneously admitted] evidence was." *Rodriguez Cortes,* 949 F.2d at 543. If the State decides to retry the defendant it could, of course, decide to rest its case solely on the petitioner's inculpatory statement and the medical evidence, or it could re-call the three witnesses to testify.[3] In either event, if the jury convicted Lufkins, the state trial court and the South Dakota Supreme Court then would have the opportunity to decide whether that evidence was sufficient.

## II.

Even if the harmless error issue were properly before us, I would uphold the district court's grant of the writ. The Supreme Court established a "harmless-constitutional-error" rule in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless *beyond a reasonable doubt." Id.* at 24, 87 S.Ct. at 828 (emphasis added). The Court has returned to the harmless error rule several times since it decided *Chapman,* each time reaffirming its original holding. In *Harrington v. California,* 395 U.S. 250, 253, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969), the Court determined that the admission of two codefendants' confessions was harmless error beyond a reasonable doubt. In light of "overwhelming evidence" against the defendant, the Court concluded that even without the confessions, a reasonable jury would still have voted to convict. *Id.* at 254, 89 S.Ct. at 1728. The Court refined the *Chapman* rule in *Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972), stating that the improper use of evidence will be harmless beyond a reasonable doubt if (1) "the properly admitted evidence of guilt is ... overwhelming," and

(2) the prejudicial effect of the erroneously admitted evidence is "insignificant by comparison." The Court elaborated on the second element of the *Schneble* test in *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986), listing the following factors to consider in evaluating the prejudicial effect of erroneously admitted evidence: (1) the importance of the erroneously admitted testimony to the prosecution's case, (2) whether the testimony was cumulative, (3) whether other evidence properly admitted corroborated or contradicted the testimony on material points, and (4) "the extent of cross-examination otherwise permitted."

Until today, this court has faithfully followed the *Van Arsdall* and *Schneble* rules. *See, e.g., Wealot v. Armontrout,* 948 F.2d 497, 500–501 (8th Cir.1991); *United States v. Copley,* 938 F.2d 107, 111 (8th Cir.1991); *United States v. Roberts,* 844 F.2d 537, 547 (8th Cir.1988), *cert. denied,* 488 U.S. 867, 109 S.Ct. 172, 102 L.Ed.2d 141, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988). Today, however, the majority ignores two very important aspects of the Supreme Court's harmless error analysis: the properly admitted evidence must be not only sufficient, but overwhelming, and the prejudicial effect of the erroneously admitted evidence must be insignificant when viewed in light of the other evidence admitted. *Schneble,* 405 U.S. at 430, 92 S.Ct. at 1058.

A proper analysis under *Schneble* and *Van Arsdall* leads to the conclusion that the error in this case was not harmless beyond a reasonable doubt. If a jury were to convict Lufkins based on the properly admitted evidence alone (Lufkins' admission, the medical evidence, and other marginally significant circumstantial evidence), the conviction might well be sustained under a "sufficiency of the evidence" analysis. The properly admitted evidence, however, does not constitute the overwhelming

---

**3.** The State claims that the three witnesses were not available at the second trial. It appears from the record, however, that they were available for an evidentiary hearing before the district court, perhaps due to changed circumstances. The probability is that they will be available for a third trial.

evidence necessary to show harmless error. *See Schneble,* 405 U.S. at 430, 92 S.Ct. at 1058. Moreover, the erroneously admitted testimony of Hayes, Hedine, and Blue Dog was far from insignificant. *Id.* Rather, it was an integral part of the prosecution's case against Lufkins.

A careful reading of the record convinces me that there would have been significant gaps in the prosecutor's case if he had relied solely on the properly admitted evidence. First, that evidence showed only that Lufkins struck Sylvester Johnson with an axe handle; that Johnson died of a subdural hematoma, which could have been caused by a single blow to the head; and that persons receiving such an injury could live as long as six to eight hours. The possibility remained that one of the other eyewitnesses to the incident also struck Johnson.[4] The prosecutor closed this door when he called three of the four eyewitnesses to testify. Hayes testified that he never hit Johnson, that no one else hit Johnson, and that Johnson did not fall and hit his own head. Hedine testified that because he has no right hand and has only three fingers and a thumb on his left hand, he could not have lifted the axe to strike Johnson; he also testified that no one other than Lufkins hit Johnson that night. Blue Dog testified that he only weighed 115 pounds, had a bad heart, and suffered from lupus. Johnson, on the other hand, was 6'1" tall and weighed 240 pounds. All of this testimony supported the prosecutor's contention that Lufkins was alone in attacking Johnson.

Second, the properly admitted evidence left open the possibility that Johnson did not die as a direct result of Lufkins' attack. Something might have happened to cause Johnson's death after the incident with Lufkins. Anticipating this problem, the prosecutor offered the testimony from Hayes to the effect that immediately after the incident, Johnson got into Hayes' car and Hayes began to drive him to the hospital. En route, according to Hayes, Johnson's skin began to turn dark, and Hayes

believed that he had died. Hayes stated that he then stopped the car and dragged Johnson's body onto the lawn of a church, where it was found the next morning. Combined with the other testimony of Hayes, Hedine, and Blue Dog, this evidence closed the gaps in the prosecution's case against Lufkins. Their testimony, if the jury believed it, directly established what the properly admitted testimony could not: that Lufkins' blow to Johnson, and that blow alone, was fatal. The testimony of Hayes, Hedine, and Blue Dog was not cumulative of the properly admitted evidence, nor did the other evidence corroborate or contradict it. *See Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438.

In sum, the error of admitting the Hayes, Hedine, and Blue Dog testimony was not harmless beyond a reasonable doubt. Without this evidence, questions still remained about what happened after Lufkins hit Johnson. Given the importance of the three witnesses' testimony, we cannot say with any confidence that the jury would have convicted Lufkins on the basis of the properly admitted testimony alone.

---

4. Moreover, the police never took fingerprints from the axe handle, making it impossible to determine whether Hayes, Hedine, or Blue Dog had also used the axe to attack Johnson.